**HOHENBERG BROTHERS
COMPANY, Appellant,**

v.

**GEORGE E. GIBBONS & COMPANY
et al., Appellees.**

No. 958.

Court of Civil Appeals of Texas,
Corpus Christi.

June 26, 1975.

Rehearing Denied Aug. 29, 1975.

Bob J. Spann, McDonald, Spann & Smith, Corpus Christi, for appellant.

F. Edward Barker, Harris, Cook, Browning & Barker, Corpus Christi, for appellees.

OPINION

NYE, Chief Justice.

This is a damage suit brought by Hohenberg Brothers Company against George E. Gibbons & Company for breach of contract for delivery of cotton. Trial was before the court without the aid of a jury. The trial court rendered judgment for Gibbons and that Hohenberg Brothers take nothing. From that judgment, Hohenberg Brothers has duly perfected its appeal to this Court.

Hohenberg Brothers Company is a cotton merchant. They buy cotton from brokers at the farmer level and ship it to domestic mills as well as to all over the world. George E. Gibbons and Company was a cotton brokerage firm engaged in the business of buying cotton directly from the farmers in this area and in turn selling it to various purchasers including Hohenberg Brothers.

The custom of the business followed by Gibbons was for Mr. Gibbons, or one of his authorized commission cotton buyers, to telephone certain farmers known to them and generally negotiate an oral understanding to purchase the farmers' cotton acreage for a certain number of points over the government loan price. Shortly thereafter, Gibbons would cause to be forwarded to the farmer a written contract which was intended to merge the oral discussions into a firm written agreement. Thereafter, Gibbons would in turn orally contact a company, such as Hohenberg Brothers, inquiring as to whether they would be interested in purchasing such a quantity of cotton from them at a certain price over the government cotton loan value. If an affirmative response was received, Gibbons would forward a written confirmation to the purchaser thereby eventually binding the seller and purchaser.

In April of 1973, Gibbons contacted a Mr. T. A. Setliff, a cotton farmer in this area. Setliff orally agreed that he would sell to Gibbons his 295 acres of cotton for a price fixed at 1600 points over the 1973 government loan price. Shortly thereafter, on or

about April 23, 1973, there was an oral conversation between Gibbons and a Mr. Bill Dugan, a representative of Hohenberg Brothers, whereby Hohenberg Brothers orally agreed to purchase "Setliff's 295 acres of cotton" from Gibbons for a price 1650 points over the 1973 government cotton loan price. Further, a written confirmation contract was sent to Setliff and to Hohenberg Brothers from Gibbons. Upon receipt of the confirmation agreement .by Hohenberg Brothers, it was approved and executed by a Mr. Gene Glotybach, secretary/treasurer of the Hohenberg Brothers Company. At this time, Gibbons had not yet received the written confirmation contract back from Setliff.

In June of 1973, Mr. George Gibbons died as a result of a heart attack. The Trust Department of the Corpus Christi State National Bank qualified as executor of his estate. Following the time that the oral contract was made with Setliff, Gibbons repeatedly tried to get Setliff to sign a written confirmation of their oral agreement without success. Subsequent to Mr. Gibbons' death, a representative of the trust department of the Bank again unsuccessfully made an effort to secure the written confirmation from Setliff.

On August 29, 1973, a letter was dispatched from the Corpus Christi State National Bank's trust department to Mr. Glotybach of Hohenberg Brothers, informing them that Setliff has given them every indication that he does not intend to deliver his 295 acres of cotton. On September 4th, 1973, Hohenberg received the trust department's letter of August 29, 1973.

On November 30, 1973, Hohenberg Brothers brought suit against Gibbons and the Estate of George E. Gibbons contending that Gibbons had breached the contract for. its failure to deliver the 295 acres of cotton. There is nothing in the record to indicate that either Gibbons or Hohenberg Brothers attempted to bring Setliff into this particular lawsuit. During the trial, Gibbons defended the suit contending that the written agreement entered into between them and Hohenberg Brothers contained certain conditions precedent which had not been met which therefore excused them from liability. The trial court rendered judgment for Gibbons that Hohenberg take nothing. The trial court filed its findings of fact and conclusions of law. From this judgment, Hohenberg Brothers has perfected its appeal to this Court.

In Hohenberg's first three points of error, it is contended in effect that the trial court erred in rendering judgment for the defendant for the reason that if Farmer Setliff had not delivered the warehouse receipts, samples and Smith-Doxey classification cards to Gibbons, it was Gibbons' obligation to cause Setliff to bring such items to him so that they could be delivered to Hohenberg Brothers. Generally, Hohenberg is contending that there exists no conditions precedent to Gibbons' liability for failure to deliver the cotton as was found by the trial court.

The trial court in its findings of fact No. 9 stated as follows:

"9. The written confirmation contract contained several conditions some being conditions precedent, the same being as follows:

(a) That Plaintiff (Hohenberg Brothers) had purchased the entire production on 295 acres of lint cotton which might be produced, gathered and ginned by September 30, 1973, and that was eligible for the 1973 government loan price, Smith Doxy Classification, and which was grown on Mr. T. A. Setliff's farm.

(b) All grades and staples from said acreage on said farm must be eligible for the 1973 government loan. Micronaire of 3.3 and up bales with Micronaire below 3.3 would be discounted according to the 1973 government discounts for Micronaire. Bales of classification showing bark or grass on Smith-Doxy cards were to be discounted according to the 1973 government discounts for bark or grass.

(c) The cotton was to be shipped F.O.B. Conpresses, Corpus Christi Compress

Warehouse Receipt Net Weights. TCA & CC Cotton Exchange Rules.

(d) Shipment of such cotton by the George E. Gibbons & Co., to Plaintiff was not to take place until a time when the George E. Gibbons & Co., had received the Compress Warehouse Receipts, samples and Smith Doxy Classification cards from T. A. Setliff, at that point they would be invoiced to Plaintiff."

Appellant Hohenberg Brothers suggests that the trial court was correct in finding that the delivery of the classification cards, receipts and samples to Gibbons from Setliff was a condition precedent, but the condition was to Gibbons being paid, not to his liability. Gibbons, on the other hand, contends that that provision (in Gibbons' contract with Hohenberg Brothers) titled "Shipment", which states:

"AS SOON AS COMPRESS WAREHOUSE RECEIPTS, SAMPLES AND SMITH–DOXEY CLASSIFICATION CARDS ARE DELIVERED TO GEO. E. GIBBONS & CO., THEY WILL BE INVOICED TO YOU."

constitutes a condition precedent to establishing any liability or duty on its part. Gibbons argues that there was no liability or duty to make any shipment to Hohenberg Brothers by Gibbons until Gibbons had received the compress warehouse receipts, samples and Smith-Doxey classification cards from Setliff, which were at no time delivered to them.

■ The record discloses that there was first an oral agreement between Hohenberg Brothers and Gibbons as to the sale of cotton on Setliff's 295 acres of land. This oral agreement was subsequently reduced to a written agreement. The law of general application is that the execution of a contract in writing is deemed to have set aside all oral agreements theretofore made. Any representations made prior to or contemporaneously with the execution of the written contract are inadmissible in the absence of accident, fraud or mistake of fact, to contradict, change or add to the plain

terms of such written contract. See *Hidalgo County v. Pate*, 443 S.W.2d 80 (Tex.Civ. App.—Corpus Christi 1969, writ ref'd n. r. e.); *Paxton v. Spencer*, 503 S.W.2d 637 (Tex.Civ.App.—Corpus Christi 1973, no writ). Hohenberg does not contend that such contract is ambiguous or uncertain.

■ If there is no ambiguity, the construction of a written instrument is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193 (Tex.Sup.1962). It has long been the rule that a contract not alleged to be ambiguous must be construed so as to ascertain the true intent of the parties as expressed in the language used in the instrument itself. The instrument alone, in the usual case, will be deemed to express the intention of the parties, for it is objective, not subjective, intent that controls. *Chaffe v. Murray*, 492 S.W.2d 680 (Tex.Civ. App.—Corpus Christi 1973, writ ref'd n. r. e.); *City Of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex.Sup. 1968). There being no ambiguity either pled or proved, the question before us is whether, when viewing the entire instrument from its four corners, the parties intended that there be certain conditions precedent to Gibbons becoming liable on the contract.

The contract itself sets out all the terms and conditions that the parties agreed to be bound by. The contract shows: first, that Hohenberg Brothers agreed to buy the entire production on 295 acres of lint cotton produced, gathered and ginned by September 30, 1973. Next, the cotton had to be from Setliff's farm and that all grades and staples had to show that the cotton was eligible for the 1973 government loan. The third condition set out in the contract, (assuming that the others had been met) was that as soon as compress warehouse receipts, samples and Smith-Doxey classification cards were delivered to George E. Gibbons & Company, the cotton would be invoiced to Hohenberg Brothers for payment.

A condition precedent in the law of contracts may be either a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. So, such conditions may relate either to the formation of contracts or to liability under them. *Perry v. Little,* 377 S.W.2d 765 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); 17A C.J.S. Contracts § 338, p. 318–319; *Continental Transfer & Storage Company v. Swann,* 278 S.W.2d 413 (Tex.Civ.App.—Amarillo 1954, writ dism'd).

When Gibbons' liability on a contract depends on the performance or happening of a condition precedent, Hohenberg Brothers must allege that the condition has happened or has been performed, or they must show facts giving rise to a waiver of performance of the conditions precedent. 13 Tex.Jur.2d Contracts §§ 377, 390; *Parkview General Hospital, Inc. v. Eppes,* 447 S.W.2d 487 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.). See also 17A C.J.S. Contracts § 338.

Here, Gibbons' contractual duty to deliver the specific cotton and to invoice Hohenberg Brothers was conditioned upon pleading and proving that: 1) the entire production on the 295 acre Setliff tract was produced, gathered and ginned by September 30, 1973; 2) that said cotton was eligible for the 1973 government loan, Smith-Doxey classification; 3) that such cotton was from the Setliff farm; and, 4) that Gibbons receive the compress warehouse receipts, samples and Smith-Doxey classification cards showing that the subject cotton was in existence.

Hohenberg Brothers neither pled nor proved the existence of the conditions, nor that such conditions had occurred or been performed, nor that there was a waiver of the performance of those conditions. *City of San Antonio v. Guido Bros. Construction Company,* 460 S.W.2d 155 (Tex. Civ.App.—Beaumont 1970, writ ref'd n. r.

e.); 13 Tex.Jur.2d Contracts §§ 377, 390. Without pleading or proving such conditions and their happening or occurrence, Hohenberg Brothers would not be entitled to recover. It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts will give effect to the intentions of the parties as expressed or as is apparent in the writing. *City of Pinehurst v. Spooner, supra.* Where the terms are still not clear, the court will hear oral testimony to ascertain the intent of the parties as expressed by the language used. *City of Pinehurst v. Spooner Addition Water Company, supra.* See also *Ohio Oil Company v. Smith,* 365 S.W.2d 621 (Tex. Sup.1963); Williston on Contracts § 610; Restatement of the Law of Contracts, § 230 (1932).

Here the record shows that Mr. Dugan, vice president of Hohenberg Brothers, in response to being questioned about the necessity of Gibbons receiving the subject documents before he would be able to ship the cotton, testified as follows:

"Q All right. I was writing and did not hear it at that time, but when you receive cotton from a buyer like Mr. Gibbons, do you then have to receive the green cards with it?

A Only as—the green cards have to accompany it as proof of the classification to determine the loan value.

Q What about warehouse receipts and compress receipts and things of that sort?

A The warehouse receipts, of course—

Q Allows you to take possession?

A To take possession of the cotton, yes."

This knowledge of the necessity of having the warehouse receipts, Smith-Doxey classification cards and samples is also reflected in the testimony of Erma Mae Heaton, one of the cotton buyers for George E. Gibbons & Company. She testified as follows:

"Q Now, over the number of years that you worked for Mr. Gibbons, as farm-

ers would come in to bring their cotton that he had bought on contract, what would they bring?

A The warehouse receipts, the green cards, and the samples.

Q Was it really necessary to—or for the George Gibbons Company to have warehouse receipts, the green cards and the samples to resell the cotton?

A Yes, sir.

Q Or to make delivery of the cotton to anyone?

A Yes, sir.

Q Are you familiar with the contract under consideration today, the dealings that Mr. Gibbons had with T. A. Setliff?

A Yes, sir.

Q Do you know if Mr. T. A. Setliff ever delivered to the George Gibbons Company any green cards, warehouse receipts, or samples from his two hundred ninety-five acres of cotton?

A No, sir; he did not."

It seems clear then from the testimony of representatives of both parties that the contract provided, and both parties realized, that before any cotton could be delivered to Hohenberg Brothers from Gibbons, the warehouse receipts, (which would transfer title to the cotton), the Smith-Doxey classification cards, and the cards, and the samples would have to be delivered by Setliff to Gibbons. Hohenberg Brothers neither pled nor proved this condition nor any other condition existed and the occurrence of such that would cause Gibbons to become liable for failure to deliver the Setliff cotton. Appellant's points of error 1–3 are overruled.

■ Appellant Hohenberg Brothers next complains in points of error No. 6 and 17 of the court's finding No. 12 and its conclusion of law No. 8, that there was no evidence, or insufficient evidence to support such finding and conclusion and that such were against the overwhelming weight and pre-ponderance of the evidence. Said finding and conclusion read as follows:

"12. No conditions precedent as contained within the written confirmation contract were waivable solely at the option of the Plaintiff, but were established in the written agreement for the benefit of both parties.

"8. No condition within the written confirmation contract was waivable solely by the Defendant, but all conditions therein were for the mutual benefit of both Plaintiff and Defendant."

Hohenberg Brothers is specifically arguing that those conditions, i. e. requiring the cotton to be produced, gathered and ginned by September 30, 1973 and those relating to time of delivery, grade, and classification were solely for the benefit of the buyer and could be waived by him.

As to appellant's no evidence point, after considering only that evidence and inferences tending to support the finding and disregarding all evidence and inferences to the contrary, we find that there was evidence of probative force to support the above findings. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965). The evidence shows that such conditions were not waivable solely by Hohenberg Brothers or Gibbons, but were, as the trial court held, for the benefit of both parties. In both the contract between Hohenberg Brothers and Gibbons and the contract to be entered into between Gibbons and Setliff, there appears the requirement that the cotton must be ginned by September 30. Mr. John Leslie Brough, manager of Edroy Co-op Gin, testified that all cotton had to be ginned by September 25, and that he could not gin any other cotton after the 25th day of September without getting permission from Commissioner White or some government official to carry it over. The reason for this, Mr. Brough testified, is because of boll-weevil control.

With respect to those conditions relating to delivery, grade and classification, these also were not waivable solely at the option

of the buyer, Hohenberg Brothers. First, the record shows that Gibbons could not deliver Setliff's cotton to Hohenberg Brothers until Setliff delivered the cotton and the required documents. These requirements as to classification, grade and ginning by September 30, 1973, were important variables with respect to price that Gibbons had contracted to pay to the farmer. If such conditions could be waived by Hohenberg Brothers at their option, Gibbons might end up paying more than the cotton was valued at. This is particularly true in light of the fact that evidence was admitted that ginning earlier in the year produced better grades of cotton with the poorer grades being produced during the latter part of the ginning season.

After considering all the evidence, we find that the court's findings were supported by sufficient evidence and the same were not against the overwhelming weight and preponderance of the evidence. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 359 (1960). Appellant's points of error 6 and 17 are overruled.

In points of error No. 7, 9 and 10, Hohenberg Brothers claim that the trial court erred in making its findings of fact numbers 10, 14 and 15 respectively. These findings read as follows:

"10. In May or June, 1973, Mr. T. A. Setliff repudiated his oral negotiations and refused to execute the written contracts sent to him by Mr. George E. Gibbons.

14. Authorized representatives of that department (Trust department of the Corpus Christi State National Bank) made repeated contacts with Mr. T. A. Setliff in an effort to secure the written confirmation. On August 7, 1973, Mr. R. L. Garrett, of Corpus Christi State National Bank, again contacted Mr. T. A. Setliff and was finally and fully rebuffed wherein Mr. Setliff informed Mr. Garrett that he had no contact with the George E. Gibbons & Co., and if there was a written confirmation at his home he did not intend to sign it.

15. On August 8, 1973, Mr. R. L. Garrett informed Mr. Bill Duggan, an officer with the Hohenberg Bros. Company, of the discussion with, and decision of, Mr. T. A. Setliff."

Appellant Hohenberg Brothers complains that there is no evidence and insufficient evidence to support these findings. Gibbons, in their brief, admit that there appears to be very little direct evidence sustaining those particular findings of fact as found by the court. We tend to agree. The only evidence admitted with respect to the above findings concern Mrs. Heaton's (secretary and cotton buyer for George E. Gibbons Co.) continued efforts to get Setliff to sign the confirmation contract which efforts continued beyond May of 1973. Such evidence would support only part of finding No. 14 leaving findings No. 10 and 15 unsupported in the evidence. However, since we have already held that there were certain conditions precedent which were never pled nor shown to have occurred, the above additional findings become immaterial to the judgment. Although it was error for the trial court to have made such specific fact findings, such error did not cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure (1967).

Appellant Hohenberg in its points of error numbers 8, 13, 14, 15 and 16 complains of Finding of Fact No. 11 and conclusion of law No. 2, 5, 6, and 7. These findings and conclusions relate to appellant's failure to plead and prove the performance of any of the conditions precedent, and that Gibbons was under no duty to perform until such conditions had happened or occurred. These points are shades of the other points which we have already discussed in detail. However we have considered them and they are overruled. *Garza v. Alviar, supra.*

Appellant, in its points of error Nos. 11 and 12, complains of the trial court's findings Nos. 19 and 20 which read as follows:

"19. The Plaintiff made no effort to mitigate that loss by attempting to go out into the market place and purchase additional cotton at that time to replace the 295 acres which Mr. T. A. Setliff refused to deliver to the George E. Gibbons & Co.

20. The plaintiff did not establish damages with sufficient clarity or certainty."

Hohenberg Brothers complain of such findings on a multitude of grounds including: 1) no evidence to support such findings; 2) there was insufficient evidence to support such findings; 3) and such findings were against the great weight and preponderance of the evidence. Because of our holding that there existed certain conditions precedent which must have occurred before Gibbons became liable for failure to deliver the cotton to Hohenberg Brothers, it becomes unnecessary to discuss these points. Had there been no conditions precedent, such points might have been relevant. These points are overruled.

In Hohenberg Brothers' point of error No. 18, it contends that the trial court erred in not granting it recovery under its allegations contained in its original petition, alleging that Gibbons represented it had procured and was in a legal position to deliver to Hohenberg Brothers the cotton produced on the Setliff farm and that it was damaged by such misrepresentations. Here, Hohenberg Brothers pled that it was damaged by the alleged false representations and along with actual damages was entitled to punitive damages in the amount of $5,000.00. The essential elements of actionable fraud which Hohenberg Brothers had the burden of proving are: 1) that a false representation was made by Gibbons; 2) that Hohenberg Brothers relied upon such representation; 3) that Hohenberg Brothers acted in reliance thereon; and 4) that Hohenberg Brothers was damaged as a result of such representations. *Menking v. Bishman Manufacturing Company,* 496 S.W.2d 762 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Finger v. Morris,* 468 S.W.2d 572 (Tex.Civ.App.—Houston (14th Dist.)

1971, writ ref'd n. r. e.). Although pleading misrepresentation, there were no material fact issues raised by the evidence to support a finding of fraud or misrepresentation. For this reason, appellant's point of error No. 18 is overruled.

We have carefully considered all of appellant's points of error and they are overruled.

Judgment of the trial court is affirmed.