HOHENBERG BROTHERS
COMPANY, Petitioner,

v.

GEORGE E. GIBBONS AND COMPANY
et al., Respondents.

No. B–5563.

Supreme Court of Texas.

May 12, 1976.

McDonald, Spann & Smith, Bob J. Spann, Corpus Christi, for petitioner.

Harris, Cook, Browning & Barker, F. Edward Barker, Corpus Christi, for respondents.

DENTON, Justice.

Hohenberg Brothers Company brought suit for damages against George E. Gibbons and Company for breach of contract for failure to deliver cotton. The trial court, sitting without a jury, rendered a take nothing judgment against the plaintiffs. The court of civil appeals affirmed, holding that the contract called for certain conditions precedent to defendant's liability and

that the occurrence of such conditions had not been proven. 526 S.W.2d 570. We reverse the judgments of the courts below and remand the cause to the trial court.

George E. Gibbons & Company was a brokerage firm that purchased future cotton production directly from the farmer and resold it to cotton merchants such as Hohenberg Brothers. It was the custom of Mr. Gibbons, or one of his staff, to telephone cotton farmers and negotiate an oral understanding whereby Gibbons agreed to purchase that farmer's cotton production for a certain number of "points" over the government loan price. Gibbons followed up these oral agreements by delivering to the farmer, for his signature and approval, a written contract that merged the oral agreement into binding and final form.

In April of 1973, Gibbons and T. A. Setliffe reached an oral agreement whereby Gibbons was to purchase 295 acres of future cotton production from Setliffe at a price of 1600 points over the 1973 government loan price. Mr. Gibbons immediately forwarded to Mr. Setliffe a written contract which contained these terms. Following this oral agreement, and before he had received a written confirmation from Setliffe, Gibbons negotiated a resale of the 295 acres of cotton to our petitioner, Hohenberg Brothers Company, at a price of 1650 points over the 1973 government loan price. This agreement between Gibbons and Hohenberg Brothers Company was the subject of a written contract signed and approved by both parties. This contract, which contains provisions as to the number of acres of cotton, price, name of farmer, shipment, etc., is the subject of the instant suit.

In June of 1973, Mr. George Gibbons died of a heart attack. Up until the time of his death Gibbons unsuccessfully tried to get Setliffe to sign the written contract confirming the terms of their oral agreement. Subsequent to Mr. Gibbons death, the executor of his estate, the Corpus Christi State National Bank, also unsuccessfully attempted to get a written confirmation from Setliffe. Setliffe steadfastly refused to deliver the cotton or sign an agreement under the terms being offered in the Gibbons' contract.

In September of 1973, the Corpus Christi State National Bank informed Hohenberg Brothers that Setliffe did not intend to deliver the cotton that Gibbons had contracted to sell to Hohenberg Brothers. In November of 1973, Hohenberg Brothers brought this suit against Gibbons and the Estate of George E. Gibbons alleging a breach of contract because of Gibbons' failure to deliver the 295 acres of Setliffe cotton. No attempt was made by either party to bring Setliffe into this lawsuit.

In its findings of fact and conclusions of law, the trial court held that the terms of the Gibbons-Hohenberg contract contemplated the occurrence of certain conditions precedent before liability arose for non-delivery of the cotton to Hohenberg. Finding that these conditions precedent had not occurred the trial court rendered a take nothing judgment against the plaintiff Hohenberg. The court of civil appeals affirmed, holding that Gibbons had no duty to perform, i. e. deliver the cotton to Hohenberg, until the conditions precedent had occurred. The court of civil appeals, however, did not reach appellant/petitioner's points dealing with trial court error on the issue of damages.

The contract terms as to "Shipment" are as follows:

"AS SOON AS COMPRESS WAREHOUSE RECEIPTS, SAMPLES AND SMITH–DOXEY CLASSIFICATION CARDS ARE DELIVERED TO GEO. E. GIBBONS & CO., THEY WILL BE INVOICED TO YOU."

It is this provision that the Gibbons' estate contends is a condition precedent to his liability. Gibbons argues that there is no liability unless and until the "Shipment" clause instruments have been delivered to him. The court of civil appeals held that Gibbons' receipt of the compress warehouse receipts, samples and Smith-Doxey classification cards from Setliffe were conditions precedent to liability and that since such

were never delivered to Gibbons that he had no duty to deliver the cotton to Hohenberg Brothers.

 A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or to liability under them. *Perry v. Little,* 377 S.W.2d 765 (Tex.Civ.App., Tyler 1964, writ ref'd n. r. e.); *Reinert v. Lawson,* 113 S.W.2d 293 (Tex.Civ.App., Waco 1938, no writ). Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Burns v. American Nat. Ins. Co.,* 280 S.W. 762 (Tex.Comm'n App.1926, jdgmt. adopted); *Perry v. Little,* supra; *Cozby v. Edwards,* 203 S.W.2d 569 (Tex.Civ. App., Fort Worth 1974, writ ref'd n. r. e.); *Toland v. Kaliff,* 435 S.W.2d 260 (Tex.Civ. App., San Antonio 1968, no writ); Restatement of Contracts § 250 (1932). While no particular words are necessary for the existence of a condition, such terms as "if", "provided that", "on condition that", or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties. *Citizens National Bank in Abilene v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003 (1941).

 However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition. *Citizens National Bank in Abilene v. Texas P. Ry. Co.,* supra; *Phillips v. Western Union Tel. Co.,* 95 Tex. 638, 69 S.W. 63 (1902). This Court has on numerous occasions discussed the nature of conditions and covenants and as a general rule has noted that, "Because of their harshness in operation, conditions are not favorites of the law." *Sirtex Oil Industries, Inc. v. Erigan,* 403 S.W.2d 784 (Tex.1966). The rule, as announced in *Henshaw v. Texas Natural Resources Foundation,* 147 Tex. 436, 216 S.W.2d 566 (1949), is that:

> "Since forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than as conditions. If the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed."

The Sales Confirmation Contract, as to the 295 acres of Setliffe cotton, between Gibbons and Hohenberg Brothers Company was prepared by George E. Gibbons & Company. In order to determine whether these parties intended that the "Shipment" clause be a condition precedent to Gibbons' liability it is necessary to construe the contract as a whole. The provisions of said contract are as follows:

```
"SALES CONFIRMATION
 Geo. E. Gibbons & Company
 COTTON

"Hohenberg Bros. Co.
Memphis, Tenn.

"We confirm the following sale through Mr. Duggan
0024

"Date 4/30/73 (Conf. by phone 4/23/73)

"Quantity THE ENTIRE PRODUCTION ON 295 ACRES OF
 LINT COTTON PRODUCED, GATHERED, AND GINNED
```

BY SEPTEMBER 30, 1973, THAT IS ELIGIBLE FOR THE 1973 GOVERNMENT LOAN, SMITH-DOXEY CLASSIFICATION, ON THE BELOW LISTED FARMS.

"Quality ALL GRADES & STAPLES ELIGIBLE FOR THE 1973 GOVERNMENT LOAN. MICRONAIRE 3.3 AND BALES WITH MICRONAIRE BELOW 3.3 WILL BE DISCOUNTED ACCORDING TO THE 1973 GOVERNMENT DISCOUNTS FOR MICRONAIRE. BALES WITH CLASSIFICATION SHOWING BARK OR GRASS ON SMITH-DOXEY CARD TO BE DISCOUNTED ACCORDING TO THE 1973 GOVT. DISCOUNTS FOR BARK OR GRASS.

"Price ___1650___ POINTS OVER THE 1973 GOVERNMENT LOAN PRICE ON ALL ELIGIBLE GRADES & STAPLES. SMITH-DOXEY CLASSIFICATION.

"Terms FOB COMPRESSES, CORPUS CHRISTI, TEXAS COMPRESS WAREHOUSE RECEIPT NET WEIGHTS. TCA AND CC COTTON EXCHANGE RULES.

"Destination

"Shipment AS SOON AS COMPRESS WAREHOUSE RECEIPTS, SAMPLES AND SMITH-DOXEY CLASSIFICATION CARDS ARE DELIVERED TO GEO. E. GIBBONS & CO., THEY WILL BE INVOICED TO YOU.

"Reimbursement BY OUR AT SIGHT DRAFT THRU A BANK WHICH IS TO BE NAMED BY YOU AS SOON AS POSSIBLE.
BANK:_____

"Producer T. A. Setliff 295 acres"

██ When these provisions are read together it is clear that the parties did not intend for the delivery of the warehouse receipts, samples and Smith-Doxey cards to be conditions precedent to Gibbons' liability. The "Shipment" clause is merely descriptive of the delivery of those instruments to Hohenberg and does not condition Gibbons' duty to deliver the cotton.

The "Quantity" clause of the contract clearly states that Hohenberg is agreeing to purchase all of the cotton production on the Setliffe farm that is "eligible for the 1973 government loan, Smith-Doxey classification." The "Price" clause shows that the price to be paid for the cotton was 1650 points over the government loan price. The "Quality" clause indicates that the Smith-Doxey classification cards are necessary to determine whether the price paid was to be discounted because of the existence of bark and grass in the bales. Therefore, the instruments listed in the "Shipment" clause were related directly to the price that Hohenberg was to pay Gibbons for the Setliffe cotton. The receipt of these instruments by Gibbons was not a condition precedent to Gibbons' liability, but delivery of said instruments to Hohenberg was a condition precedent to Hohenberg's duty to make payment.

It is clear that a contract was made whereby Gibbons agreed to furnish Hohenberg with the 295 acres of Setliffe cotton. Gibbons' ability to reach a binding agreement with Setliffe, and thereby obtain the instruments and samples, was not a condition to Gibbons' promise to deliver the cotton. At no time has Gibbons argued that it was impossible for him to buy the Setliffe cotton and thereby honor his contract with Hohenberg Brothers. Gibbons contends that he merely could not obtain the cotton at the price which he originally anticipated and therefore is not liable regardless of the fact that the cotton was available to him at a higher price. Gibbons' argument is that he is not liable unless he has received the "Shipment" instruments and samples, and since he has not received these he has no duty to deliver the cotton to Hohenberg Brothers. Gibbons' failure to obtain and deliver the cotton and appropriate instruments to Hohenberg cannot be said to be a defense to the contract.

The judgments of the courts below are reversed and the cause is remanded to the trial court for a new trial.