# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00093-CV

**Joseph D. Longton, Appellant**

**v.**

**Pamela Lyn Longton, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. FM0-01907, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

Joseph and Pamela Longton agreed in open court to enter into binding alternative dispute resolution to dissolve their marriage. The primary issue presented is whether this agreement constituted a "written agreement" enforceable under section 6.601 of the Family Code. *See* Tex. Fam. Code Ann. § 6.601(b) (West 1998). In five issues, Joseph Longton appeals, contending that the district court erred in entering the divorce decree based upon the arbitration award. We overrule the issues presented and affirm the district court's judgment.

## PROCEDURAL BACKGROUND

On September 19, 2000, while their divorce action was pending, the Longtons appeared in court before the Honorable W. Jeanne Meurer for a hearing on motions for the appointment of a receiver of their joint real estate business, Longton Partners Real Estate, and for an order compelling the sale of their residence. At the conclusion of the hearing, a discussion ensued concerning the possibility of engaging in a binding ADR proceeding regarding their divorce dispute.

Judge Meurer offered to decide issues upon which the Longtons could not agree. The parties acknowledged that an impediment to proceeding in that manner was Pamela's third-party action against another real estate broker in the Longtons' real estate business with whom Joseph was engaged in an intimate relationship.[1] The broker had also filed counterclaims against Pamela.

At the hearing, the parties agreed to forego a trial and to resolve their dispute through a binding ADR proceeding in accordance with the Family Code. *See* Tex. Fam. Code Ann. § 6.601. On the record, Judge Meurer explained the consequences of their decision. With the parties under oath, and in response to questioning by their attorneys, both Joseph and Pamela agreed to proceed. They expressly waived their rights to a jury trial, waived a record of the proceeding, and agreed to time limits and a format for the alternative dispute resolution proceeding. Pamela agreed to release her claims against the broker, thereby leaving an issue of commissions owed to be resolved between the broker and Joseph.

Under oath, Joseph expressly waived "valuable rights" to which he was otherwise entitled and agreed to be bound by Judge Meurer's determination, which he acknowledged would "result in the entry of a final and non-appealable order." He further agreed to pay the broker's commissions and attorney's fees she incurred in connection with the Longtons' divorce proceedings.

Having made these agreements and after acknowledging their rights, the Longtons allowed Judge Meurer to arbitrate their divorce. At the conclusion of the ADR proceeding on September 22, 2000, Judge Meurer announced her ruling. The parties thereafter attempted, but were unable, to agree upon the form of a final decree. After expressing her frustration to the parties about

---

[1] The facts of this case are known to the parties, and we do not recite them here in greater detail than is necessary to resolve this appeal.

2

their inability to agree upon an order, at a hearing on Friday, October 20th, the trial court denied Joseph's motion for continuance and ordered the parties "to appear at the 9:00 docket on Monday morning [October 23rd]."

On October 23rd, the case was assigned to the Honorable John K. Dietz. At proceedings before Judge Dietz on October 23rd and 24th, the parties presented arguments. Pamela filed a motion to reduce the arbitration award to judgment. She also submitted to Judge Meurer and Judge Dietz a proposed judgment and confirmation of ruling, seeking verification that the proposed judgment represented the court's ruling in the ADR proceeding. Joseph's counsel argued that, because the proceeding embraced characteristics of both mediation and arbitration, his client had not consented to the hybrid resolution proceeding.

Having reviewed the parties' various motions, Judge Dietz expressed his inclination to grant Pamela's motion to reduce the award to judgment. Pamela offered to adduce additional evidence to support the judgment; Joseph did not offer any additional evidence or proffer a bill of exceptions. Instead of granting Pamela's order, Judge Dietz remanded the case to Judge Meurer for confirmation of her original rulings.

At a hearing on October 27th, Judge Meurer confirmed her September 22nd arbitration award. The award was presented to Judge Dietz who signed the final decree of divorce on November 7th. Neither party proffered additional evidence; no further hearings were requested.

Findings of fact and conclusions of law filed on December 21, 2000 included findings that (i) the parties agreed to submit all disputed issues in the case to Judge Meurer for final, binding, non-appealable resolution and (ii) the parties' agreement was commemorated in writing by the official court reporter. Joseph has not challenged these, or any, of the court's findings or conclusions.

3

Joseph appeals a judgment in favor of Pamela on the grounds that the trial court erred in signing their divorce decree based on an arbitration award that was (i) entered without hearing evidence to support the award, (ii) not in compliance with the Family Code, (iii) invalid for lack of a condition precedent, and (iv) incomplete.

**DISCUSSION**

Joseph first complains on appeal that the trial court erred by entering the decree of divorce without conducting a hearing to receive evidence. In accordance with the parties' agreed procedure, testimony was given and evidence considered in a hearing conducted by Judge Meurer beginning on September 18, 2000, and concluding on September 22nd. In that hearing, Judge Meurer ruled on all issues not agreed upon by the parties. She then rendered her decision regarding the parties' property and child custody issues. When Joseph opposed the motion to render judgment on the arbitration award, Judge Meurer placed the case on the trial docket and assigned it to Judge Dietz. After hearing argument from the parties and receiving Judge Meurer's order confirming the arbitration award, Judge Dietz signed the decree of divorce.

Because Judge Dietz first indicated he would hear evidence and then decided it was unnecessary, Joseph contends that the decree is unsupported by any evidence. We disagree. Absent a statutory or common law ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints, including the sufficiency of the evidence supporting the award. *Jamison & Harris v. National Loan Investors*, 939 S.W.2d 735, 737 (Tex. App.—Houston [14th Dist.] 1997, writ denied); *J.J. Gregory Gourmet Servs., Inc. v. Antone's Imp. Co.*, 927 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1995, no writ). Joseph does not challenge the evidence supporting the award. Instead, he complains that Judge Dietz did not conduct a hearing on the

4

motion to render judgment on the arbitration award. But the trial court did not refuse to hear Joseph's evidence at the hearing. Apart from the evidence received during the proceedings from September 18th through 22nd, Joseph failed to offer any evidence.

Section 6.601(b) of the Family Code provides that "[i]f the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award." Tex. Fam. Code Ann. § 6.601(b). This provision does not require a hearing to enter the award. Rather, in a suit affecting the parent-child relationship, the Family Code simply requires the entry of the order consistent with the award "unless the court determines at a non-jury hearing that the award is not in the best interest of the child." *Id.* § 153.0071 (West 1996). Joseph did not contend that the arbitration award is not in the best interest of his children. We conclude the court was not required to receive additional evidence to support the award. Further, because Joseph failed to raise this contention in the trial court or in his motion for new trial, the complaint presents nothing for our review. We overrule Joseph's first issue.

Joseph next contends that the agreement to submit to binding arbitration violated the Family Code because it was not in writing. *See id.* §§ 6.601(a) (West 1998), 153.0071(a) (West. 1996). Section 6.601(a) of the Family Code is identical to section 153.0071, except that section 153.0071 refers to a suit affecting the parent-child relationship. *Compare id.* § 153.0071(a) (West 1996), *with id.* § 6.601(a) (West 1998).

The rationale for the writing requirement is a time-honored one: oral agreements concerning suits "are very liable to be misconstrued or forgotten and to beget misunderstandings and controversy." *Birdwell v. Cox*, 18 Tex. 535, 537 (1857). The requirement is minimal and the benefits

are great.  The Family Code does not specify how the writing requirement may be satisfied.  But it is clear that a writing is required.

Here, the agreement to be bound by the ADR proceeding was made in open court and recorded by the court reporter with the parties under oath, after examination by counsel and the court; it was reduced to writing by the court reporter before the entry of judgment.  The parties agreed on the record that the proceeding would be binding and result in a final and non-appealable order with the court deciding issues not agreed upon by the parties.[2]  While the statute may contemplate an agreement drafted and executed by the parties and their counsel, we cannot say that, under the circumstances of this case, an agreement made under oath and on the record and reduced to writing before the conclusion of the proceedings is insufficient to satisfy the Family Code writing requirement.

Joseph does not claim that he did not agree to arbitrate all matters in dispute, or that he did not know the agreement would be binding, irrevocable, and non-appealable.  His attorney specifically asked him whether he understood the ADR proceeding to be binding, resulting in a final and non-appealable order.  Joseph replied that he did.  The parties were fully advised of their right to trial with its attendant procedural safeguards.  The record makes clear that, to resolve their dispute, the parties relinquished their right to a jury trial and traditional litigation in favor of a binding ADR

---

[2]  The parties disagree about the appropriate nomenclature to describe the alternative dispute mechanism employed by Judge Meurer.  The record reflects that each party made references to the proceeding as both arbitration and mediation; it is apparent from a careful review of the record that both were contemplated by the parties.  In fact, when asked by Joseph to describe the nature of the proceedings, Judge Meurer admonished him that, "It is important that the parties understand that in trying to assess . . . this case [and come] to closure, you have a quote 'mediation/arbitration.'"

procedure. If parties are free to repudiate their agreements, disputes will surely prolong litigation and reduce the effectiveness of ADR mechanisms.

Parties cannot be forced to settle their conflicts outside of court; but if they enter into an agreement that complies with section 6.601, they should be required to honor that agreement. Because the agreement to arbitrate was reduced to writing during the course of the proceedings, we hold that the statute's writing requirement is satisfied. *See Cooper v. Bushong*, 10 S.W.3d 20, 24 (Tex. App.—Austin 1999, pet. denied) (upholding an arbitration award where "a transcript containing the arbitrator's award was introduced into evidence before the district court, and the record indicate[d] that the court had a copy of the award when he rendered his decision"). Accordingly, we overrule Joseph's second issue.

By his third issue, Joseph contends that the trial court erred by entering the divorce decree because the arbitration agreement was vitiated for lack of a condition precedent. Without citation to authority, Joseph argues that, because the agreement announced in open court contained a condition precedent that was not met, the agreement was not binding.

An obstacle to the initial agreement to arbitrate was Pamela's third-party claims for fraud against Joseph's broker-girlfriend and her counterclaims against Pamela for slander and against the partnership for commission payments and attorney's fees. At the hearing on September 19th, Joseph and Pamela agreed that they would submit their entire divorce case to binding arbitration. Joseph also agreed to pay the broker's commissions and attorney's fees out of his share of the community estate; Pamela agreed that she would not pursue her claims against the broker if the broker agreed to release her claims for slander against Pamela. Joseph's counsel advised the court:

7

"Mr. Longton would like to make a condition of the agreement to mediate that those issues are resolved and—and not considered." The following colloquy then occurred:

[Joseph]: Your Honor, can the participants—the actually [sic] participants say one thing?

* * *

[The Court]: Sure. If you want to.

[Joseph]: The—in saying we go ahead with binding arbitration, one of the—I guess the final bone of contention is, what do we do with the claims regarding [the broker].

And what I see happening here in the future is that I'm going to bring a bunch of witnesses. . . . Pam is going to bring some people to disparage her character. . . . We're going to end up neutralizing each other in this court case . . . .

And I'm wondering if we can't just say, I'm willing to go ahead and pay the—the commissions that are due to her. We owe her about $60,000 right now—or will be coming due over the next year. And they both dropped the charge against each other. [The broker], her slander charges against Pam, and vice versa; and we're done with that. We let that—we let that animal die.

* * *

[Counsel for Joseph]: And is it your agreement that in connection with this mediation agreement, that you have agreed to pay the commissions that are due [the broker] in the future as they come due?

[Joseph]: Yes, I do.

[Counsel]: And that you've also agreed to pay the attorney's fees that her attorney has incurred as a result of [the broker's] involvement in this case?

[Joseph]: Yes.

[Counsel]: And is it also your understanding that, as a condition of this mediation agreement, that Pam Longton is releasing all of her claims against [the broker], and against Longton Partners Real Estate?

8

| [Joseph]: | Yes. |
|---|---|
| [Counsel]: | And further, is it your understanding that this agreement to enter into binding mediation is contingent upon [the broker and her lawyer's] agreement that they will accept the terms of this mediation agreement, and that they will release all claims that [the broker] has against Pam Longton or Longton Partners Real Estate? |
| [Joseph]: | Yes. |
| [Counsel]: | And based on those representations, are you willing to let Judge Meurer act as the mediator in this case to enter final orders with respect to the division of your properties, and with regard to your children? |
| [Joseph]: | Yes, I am. |

At the conclusion of the arbitration, Judge Meurer announced her decision. The parties, however, were unable to agree on the form of a judgment incorporating the agreement to release the third-party claims and counterclaims. At the October 20th hearing on Pamela's motion to enter judgment, Judge Meurer expressed her frustration that the parties had been unable to agree on a judgment incorporating the release of the claims and threatened to void the arbitration. Instead of voiding it, however, Judge Meurer severed the third-party claims and ordered the parties to appear the following Monday at the trial setting of the case.

In subsequent proceedings against the broker to obtain the entry of the decree, Pamela non-suited her third-party claims with prejudice. With this tender, Pamela also waived her right to demand that the claims against her—other than the claims for commissions and attorney's fees that Joseph agreed to pay—be dismissed, and that she would be responsible for her own defense and any liability resulting from the claims. Because the contingency requiring the broker to release her counterclaims to Pamela's third-party action only benefitted Pamela, and not Joseph, Pamela contends

9

that the contingency is not a condition precedent and cannot be urged to prevent the entry of the final decree of divorce. We agree.

Conditions precedent are not favored in the law. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990); *Reilly v. Ranger Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). To determine whether an antecedent agreement is a condition precedent, as Joseph contends, or a covenant, as Pamela urges, we must discern the parties' intent by looking at the purpose of the entire agreement. *Criswell*, 792 S.W.2d at 948. When the intent of the parties is unclear or when construing a provision as a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant instead of a condition. *Id.*; *Hohenberg Bros. Co.*, 537 S.W.2d at 3.

The Longtons agreed to arbitrate their divorce and, in so doing, expressly waived their rights to a jury trial and all the concomitant proceedings and protections. They both acknowledged that the ADR proceeding would result in a final, binding, non-appealable order; their intent was clearly to avoid the time and expense of protracted litigation. It is unlikely that Pamela would have engaged in a four-day arbitration proceeding knowing her husband's girlfriend could later reject the final judgment. To conclude otherwise would ignore the fact that, prior to the arbitration procedure, Joseph assured Pamela in open court that he could convince the broker to release her claims against Pamela and that he would indemnify Pamela from the broker's claims relating to commission and attorney's fees.

Additionally, accepting Joseph's contention that his broker-girlfriend's release of her counterclaims was a condition precedent to the binding ADR procedure would lead to the absurd

10

result that, because Joseph was unhappy with the consequences of his decision to engage in binding arbitration, a third party aligned with him could frustrate the court's authority to enforce an agreement voluntarily and knowingly entered into by the parties. Because the contingency was to Pamela's benefit, Joseph cannot assert a claim of condition precedent to his benefit for the purpose of defeating entry of the final divorce decree. Joseph's third issue is overruled.

In his fourth issue, Joseph contends that the district court entered a divorce decree that was incomplete and failed to dispose of all parties' claims.[3] *See* Tex. R. Civ. P. 301. Joseph claims that the divorce decree omitted a disposition of partnership claims and two attachments identifying particular liens rendered in Pamela's favor. Pamela responds by arguing that a judgment need not contain all documents to which it refers; rather, it may simply make reference to documents contained in the record. A judgment must be sufficiently definite and certain to define and protect the rights of all parties. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). That is, it should provide an identifiable means of ascertaining the parties' rights so that ministerial officers can execute the judgment without inquiring into facts not contained therein. *Id.*

The documents about which Joseph complains, although not attached to the judgment, are part of the record and are clearly identifiable. The first document, "Exhibit A," lists Pamela's lien on partnership real estate contracts. The second document, "Exhibit H-1," identifies a judgment in Pamela's favor for $1,080,000.00. Exhibit A is attached to the court's signed confirmation of ruling; Exhibit H-1 is attached to the court's findings of fact and conclusions of law. Because we cannot say

---

[3] Joseph also challenges references made by Pamela's counsel, both in her brief and in her motion to supplement the record, to documents not contained in the Clerk's Record. Because her motion was overruled and we do not rely on any documents not contained in the Clerk's Record, we do not address this issue.

11

the decree failed to dispose of the parties' claims or provide a definite means of ascertaining their rights, we overrule Joseph's fourth issue.

Finally, Joseph contends that Judge Meurer erred in denying the parties' motions for continuance. We review a trial court's denial of a motion for continuance for an abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). A trial court does not abuse its discretion merely because a reviewing court would reach a different conclusion. *Downer v. Aquamarine Operations*, 701 S.W.2d 238, 241-42 (Tex. 1985). So long as the trial court's action was not without reference to guiding principles and rules of law, it should be upheld. *Id*. Therefore, reversal is appropriate only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

As evidence that Judge Meurer abused her discretion in denying his oral motion for continuance, Joseph argues that discovery had not been completed, that none of the required documents in the family law case had been filed, and that the parties agreed to the continuance. None of these assertions would entitle the parties to a continuance as a matter of right and none are supported with authority or record cites. Without such information, we cannot say the trial court abused its discretion. Joseph's fifth issue is overruled.

Because Texas law favors ADR procedures, every reasonable presumption will be indulged to uphold the arbitration proceeding. *Brazoria County v. Knutson*, 176 S.W.2d 740, 743 (Tex. 1943); *Daniewicz v. Thermo Inst. Sys., Inc.*, 992 S.W.2d 713, 716 (Tex. App.—Austin 1999, pet. denied). Once the parties submit their dispute to arbitration and an award has been made, the parties are bound by the award if no fraud, mistake, or misconduct was involved. *L.H. Lacy Co. v.*

12

*City of Lubbock*, 559 S.W.2d 348, 352 (Tex. 1977). Here, the parties knowingly and willingly agreed to resolve their divorce dispute using a binding ADR procedure. They were admonished by the court and their respective counsel about the nature of the proceeding and the consequences of their decision. There have been no allegations of fraud, mistake, or misconduct. No showing has been made that the trial court abused its discretion. Absent these allegations, it would indeed be unjust to set aside the divorce decree that the parties expressly intended to be final and non-appealable. To search for a technicality by which to void the decree would do harm to the parties' intendment and would contravene Texas' stated policy favoring enforcement of arbitration awards. The Family Code specifically contemplates a broad procedural framework to encourage the creative and cooperative resolution of disputes by the judge, the parties, and their counsel. In the spirit of that framework, we uphold the district court's order.

## CONCLUSION

Having overruled Joseph Longton's issues, we affirm the trial court's decree of divorce.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   November 15, 2001

13

Do Not Publish