COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-327-CV
 
PAUL REED AND DEBORAH MARINO                                               
APPELLANTS
V.
BARRY KAGAN                                                                       
        APPELLEE
------------
FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
This case involves the dispute over a
contract for the sale of a boat. Appellee Barry Kagan ("Appellee")
sued Appellants Paul Reed and Deborah Marino (collectively
"Appellants") when they refused to complete the purchase of the boat
in accordance with the contract. Appellants asserted several affirmative
defenses and counterclaims. Appellee attempted to negate those defenses and
claims by filing a motion for partial summary judgment, which the trial court
granted. After a bench trial, the court found in favor of Appellee for actual
damages and attorney's fees. We affirm in part and reverse in part.
I. FACTUAL SUMMARY
Appellants stated in separate affidavits
attached to their response to Appellee's motion for partial summary judgment
that on September 25, 1998, they were at Lakeview Marina with some friends.
While there, Reed noticed Appellee's boat, which was docked at the fuel pump.
After Reed expressed admiration for the boat, Appellee stated that he had
another boat for sale and asked if Reed had any interest in looking at it.
Answering affirmatively, Reed followed Appellee to the other boat, which is the
subject of this lawsuit. Appellee stated that the sales price for the boat was
$67,500. While Appellee and Reed were on the boat, Larry Buck, the owner of the
marina, joined them. Buck asked Appellee, "Where's my sign?" and
Appellee pulled from a storage locker a sign stating that the boat was "For
Sale by Chandry Marine."
According to his affidavit, Reed told the
other men that he was going to get his wife, Marino, to look at the boat. After
Appellants had looked at the boat and as they were walking back to meet up with
their friends, Buck approached them and stated that he could get the boat for
them for a lower price of $57,500. After further discussion, Buck stated that if
Appellants wanted to inspect the boat, then they needed to give him a $5,000
check and a written proposal. Both affidavits stated that Buck emphasized that
they could not take the boat out on the water until he received the check and
proposal. Buck assured Appellants that he would not cash the check but that he
needed to present the check with the proposal.
The affidavits further stated that
Appellants went with Buck to his office at the marina. During their conversation
about the boat, Appellants told Buck that "this was just a proposal until
the boat was appraised." Buck assured them that the document was just a
proposal. Both Appellants expressed a desire to inspect the boat to ensure that
it was worth the price. Buck assured them that the boat was worth the price.
The proposal was written on a form used by
Chandry Marine for creating work orders and invoices. In addition to the
parties' signatures, sales price, and other miscellaneous provisions, the
handwritten document contained a provision that read "Purchaser to pay for
Insurance, Survey and Sales Tax." According to Appellants' expert, a survey
is an evaluation of a boat and a written opinion as to the condition and value
of the boat. It is similar to an appraisal. The document also provided that the
boat was "sold in as is condition."
After the proposal was signed by
Appellants, Buck excused himself to deliver the document to Appellee, who was
still at the marina. When Buck returned, the parties discussed the hiring of an
inspector to check out the boat, and Buck agreed to give the inspector the boat
keys.
The inspector found problems with the boat
and reported that the boat's fair market value was less than the sales price.
Appellants then refused to purchase the boat, and Appellee sued them for breach
of contract. After filing an answer, Appellants eventually filed their first
amended answer and second amended counterclaim generally denying all of
Appellee's claims, specifically denying both Appellee's capacity to sue and the
existence of a contract, and alleging affirmative defenses of fraud in the
inducement, ambiguity, no acceptance, mitigation of damages, measure of damages,
and material alteration. Appellants' counterclaim requested declaratory relief
and alleged breach of contract, conversion, deceptive trade practices, and fraud
against Appellee. This amended pleading was filed seven days before the hearing
on Appellee's motion for partial summary judgment.
Appellee filed a motion for partial
summary judgment against Appellants arguing that their affirmative defenses and
counterclaims should be denied as a matter of law. The trial court granted the
motion and ordered that Appellants take nothing with respect to their
counterclaims for declaratory judgment, conversion, and deceptive trade
practices. Furthermore, the trial court denied Appellants' affirmative defenses
pertaining to Appellee's capacity to sue, conditions precedent, and fraudulent
inducement.
The case was tried before the court.
Appellants attempted to introduce evidence on their affirmative defenses and
counterclaims including their claim for common law fraud, but upon objection,
the trial court excluded the evidence. Appellants, however, offered several
bills of exception on the evidence excluded. The trial court ordered that
Appellee recover from Appellants actual damages of $7,500, interest of
$1,536.58, and attorney's fees of $40,891.04.
Appellants timely filed a request for
findings of facts and conclusions of law and a motion for new trial. The trial
court filed the findings of fact and conclusions of law, and the motion for new
trial was overruled by operation of law.
II. LEGAL ANALYSIS
Appellants raise two interrelated points.
First, they argue that the trial court erroneously granted Appellee's motion for
partial summary judgment on Appellants' affirmative defenses, counterclaims, and
motion for declaratory judgment, and second, they argue that the trial court
abused its discretion in excluding Appellants' evidence supporting those
defenses and claims.
A. Standard of Review
In a summary judgment case, the issue on
appeal is whether the movant met his summary judgment burden by establishing
that no genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.(2) The burden of
proof is on the movant, and all doubts about the existence of a genuine issue of
material fact are resolved against the movant.(3)
Therefore, we must view the evidence and its reasonable inferences in the light
most favorable to the nonmovant.(4)
In deciding whether there is a material fact issue precluding summary
judgment, all conflicts in the evidence are disregarded and the evidence
favorable to the nonmovant is accepted as true.(5)
Evidence that favors the movant's position will not be considered unless it is
uncontroverted.(6)
The summary judgment will be affirmed only if the record establishes
that the movant has conclusively proved all essential elements of the movant's
cause of action or defense as a matter of law.(7)
A plaintiff is entitled to summary judgment if the summary judgment evidence
establishes, as a matter of law, that at least one element for each affirmative
defense or counterclaim alleged by a defendant cannot be established.(8)
B. Common Law Fraud
In their first point, Appellants argue that they timely filed a second
amended counterclaim alleging a cause of action for common law fraud. They
contend that Appellee's motion for partial summary judgment failed to address
this cause of action and that evidence relevant to the common law fraud claim
should not have been excluded by the trial court. We agree.
Summary judgment cannot be granted except on the grounds expressly
presented in the motion.(9) If the nonmovant
timely amends its petition to add a new cause of action after the movant has
filed its motion for summary judgment, the movant must amend the motion to
negate the newly pled theory.(10) A party can
amend its pleadings without obtaining leave from the trial court as long as the
amendment is filed seven or more days before trial.(11)
For purposes of Rule 63, a summary judgment proceeding is considered a trial.(12)
Appellants filed their "FIRST AMENDED ANSWER AND SECOND AMENDED
COUNTERCLAIM" on May 18, 2001. The hearing was held on May 25, 2001.
Accordingly, the pleading was filed seven days before the hearing.(13)
We hold that Appellants' amended petition and counterclaim were timely filed and
that Appellee's motion did not address the newly pled claim for common law
fraud.(14) We sustain Appellants' first point to
the extent Appellants argue that their counterclaim for common law fraud was not
addressed in the trial court's partial summary judgment.
C. Capacity
Appellants alleged in their original answer that Appellee did not have
the capacity to sue in this case. Appellee argued in his motion for partial
summary judgment that because both Appellants admitted that he was the seller of
the boat, no genuine issue of material fact exists as to his capacity as a party
to the contract, and, therefore, he has the right to sue on the contract. We
agree.(15) We overrule both of Appellants'
points to the extent the points pertain to Appellee's capacity to sue on the
contract.
D. Conditions Precedent
Appellants next argue that the trial court incorrectly granted
Appellee's motion for partial summary judgment on their affirmative defense that
alleged the failure of a condition precedent. Specifically, Appellants argue
that Buck orally agreed that if the boat did not appraise for the sales price,
then they would not have to follow through with the contract. They argue that an
ambiguity exists as to the meaning or purpose of the survey provision because
the contract also contains an "as is" warranty modification.
Consequently, according to Appellants, parol evidence is admissible to explain
the meaning of the survey provision, which they allege was the basis for the
condition precedent. We disagree.
In construing a written contract, the primary concern of the court is
to ascertain the true intentions of the parties as expressed in the instrument.(16)
The parties' intentions are determined by reference to the words used in the
contract.(17) Every phrase, word, and provision
should be harmonized so that none will be rendered meaningless.(18)
No single provision controls to the exclusion of another; instead, each must be
considered with reference to the whole document.(19)
Contracts that can be given a definite legal meaning are not ambiguous.(20)
However, if a contract's meaning is uncertain and doubtful or if it is
susceptible to more than one meaning, then the contract is ambiguous.(21)
The determination that a contract is ambiguous is a question of law for the
court to decide by reviewing the whole contract in the light of the
circumstances present when the contract was first executed.(22)
The document in this case states that the boat is sold as is. It also
provides that the purchaser is to pay for any insurance, survey, and sales tax.
Appellants argue that an ambiguity arises because of the conflict between the
meaning of this latter provision and the warranty modification. They argue that
the survey clause can only be a condition precedent providing that if the boat
fails the survey, then the purchasers are not required to buy it.
"Conditions precedent to an obligation to perform are those acts
or events, which occur subsequently to the making of a contract, that must occur
before there is a right to immediate performance and before there is a breach of
contractual duty."(23) Terms such as
"if," "provided that," "on condition that," or
other limiting phrases "usually connote an intent for a condition rather
than a promise."(24) If a contract fails to
utilize one of the above conditional provisos, a determination of whether a
contractual provision is a condition is made by determining the parties' intent
and by reviewing the entire contract.(25)
"[W]here the intent of the parties is doubtful or where a condition would
impose an absurd or impossible result, then the agreement will be interpreted as
creating a covenant rather than a condition."(26)
Courts do not favor forfeitures and prefer to interpret contractual provisions
as covenants instead of conditions.(27)
The contract provision in this case merely states that the purchaser is
to pay for a survey. No conditional language is used to limit the effect of the
contract. Appellee's interpretation of the provision is that if the purchasers
want a survey then the purchasers must pay for the survey. On the other hand,
Appellants' interpretation results in the forfeiture of the contract.(28)
We hold that the survey provision is a covenant and that the contract clearly
and unambiguously provides that if the purchaser wants a survey, then the
purchaser must pay for the cost of the survey.(29)
We hold that the trial court did not err when it granted Appellee's partial
summary judgment on Appellants' condition precedent affirmative defense, and we
overrule Appellants' points to that extent.
E. Fraudulent Inducement
Reed and Marino argue that Appellee failed to show as a matter of law
that there was no fraudulent inducement. The trial court's partial summary
judgment on Appellants' fraud defense will be upheld only if Appellee negated at
least one element of the claim.(30)
A party claiming fraudulent inducement must demonstrate (1) a material
misrepresentation (2) that was false, (3) that was either known to be false when
made or was asserted without knowledge of the truth, (4) that was intended to be
acted upon, (5) that was acted upon, and (6) that caused injury.(31)
Appellee argued in his motion for partial summary judgment that Appellants were
precluded from asserting their fraud claim as a matter of law. Appellee argued
that an "as is" contract provision obviates a fraudulent inducement
claim, citing Prudential Insurance Company of America v. Jefferson
Associates.(32)
Contrary to Appellee's interpretation, Jefferson Associates
states that a buyer is not bound by a purchase agreement that contains an
"as is" warranty modification when the buyer was initially induced to
execute the agreement by the seller's fraudulent misrepresentation of the item
to be purchased.(33) In other words, a seller
cannot assure a buyer of the condition of the item to be purchased to obtain the
buyer's agreement to purchase the item "as is," and then disavow the
assurance which procured the "as is" agreement.(34)
Appellee offered no evidence other than the contract to support this
argument. Appellee failed to negate at least one element of Appellants' fraud
affirmative defense; thus he failed to meet his summary judgment burden.(35)
We sustain Appellants' points as to the trial court's denial of their fraudulent
inducement claim.
F. Declaratory Judgment
Appellants next argue that their motion for declaratory judgment raised
issues that were separate and distinct from the issues raised by Appellee's
original petition. Appellee argued in his motion for partial summary judgment
that Appellants' request for declaratory relief presented no new issue to the
trial court and, therefore, should be denied. The trial court ordered that
Appellants take nothing on their request for declaratory relief.
The validity of a contract, contract construction, and the
determination of a party's rights under the contract are all issues properly
resolved by a motion for declaratory judgment.(36)
However, a declaratory judgment is not available to resolve issues that are
already pending before the same court.(37)
Appellee's petition alleged in one cause of action that Appellants
failed to pay the balance due on the contract, and, therefore, they breached
their contract with him. In their initial answer to Appellee's petition,
Appellants requested a declaratory judgment on whether Appellee possessed the
capacity to sue on the contract, whether a contract existed, whether conditions
precedent had failed, and whether the deposit should be returned. None of the
issues presented in the motion for declaratory judgment was before the trial
court prior to Appellants' filing of the motion.(38)
We sustain both of Appellants' points to the extent the points relate to their
motion for declaratory judgment.
G. Deceptive Trade Practices and Conversion
Appellants next argue that the trial court erred when it ordered the
take-nothing judgment on their deceptive trade practices and conversion claims.
Appellee argued in his motion for partial summary judgment that the statute of
limitations barred both of these claims as a matter of law. On appeal,
Appellants claim that their deceptive trade practices and conversion
counterclaims were based on the same transaction and occurrence as Appellee's
breach of contract claim and, therefore, are not barred by the statute of
limitations. We agree.
A counterclaim is timely filed if it meets the requirements of section
16.069 of the Texas Civil Practice and Remedies Code.(39)
The section provides that

        (a) If a counterclaim . . .
 arises out of the same transaction or occurrence that is the basis of an
 action, a party to the action may file the counterclaim . . . even though as a
 separate action it would be barred by limitation on the date the party's
 answer is required.
        (b) The counterclaim . . . must
 be filed not later than the 30th day after the date on which the party's
 answer is required.(40)

 
Section 16.068 of the Texas Civil Practice and Remedies Code states:

        If a filed pleading relates to a
 . . . counterclaim . . . that is not subject to a plea of limitation when the
 pleading is filed, a subsequent amendment or supplement to the pleading that
 changes the facts or grounds of liability or defense is not subject to a plea
 of limitation unless the amendment or supplement is wholly based on a new,
 distinct, or different transaction or occurrence.(41)

The contract was dated September 23, 1998. Appellee filed his original
petition on January 28, 1999. Appellants filed their original answer and motion
for declaratory judgment on February 17, 1999. The statute of limitations for
claims under the Deceptive Trade Practices Act and for conversion is two years.(42)
All of the causes of action before the trial court arose out of the same
transaction, which was the alleged sale of Appellee's boat to Appellants. We
therefore hold that the trial court erred when it granted Appellee partial
summary judgment on Appellants' deceptive trade practices and conversion
counterclaims, and we sustain Appellants' points on these grounds.
III. CONCLUSION
Because we overruled Appellants' challenge to the trial court's partial
summary judgment on their defenses alleging lack of capacity and the failure of
a condition precedent, we affirm the trial court's judgment for Appellee on
those affirmative defenses. We reverse the remainder of the trial court's
judgment and remand the case to the trial court for further proceedings.
 
                                                                      
LEE ANN DAUPHINOT
                                                                      
JUSTICE
 
PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.
DELIVERED: August 7, 2003

1. See Tex. R. App. P. 47.4.
2. Tex. R. Civ. P. 166a(c); S.W. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).
3. S.W. Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins.
Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).
4. Great Am., 391 S.W.2d at 47.
5. Rhone-Poulenc, 997 S.W.2d at 223; Harwell
v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).
6. Great Am., 391 S.W.2d at 47.
7. Clear Creek Basin, 589 S.W.2d at 678.
8. See Elliott-Williams Co. v. Diaz, 9 S.W.3d
801, 803 (Tex. 1999) (stating that a defendant must negate at least one element
of the plaintiff's cause of action to be entitled to summary judgment as a
matter of law); see also Lear Siegler, Inc. v. Perez, 819 S.W.2d 470,
471 (Tex. 1991).
9. Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 204 (Tex. 2002); Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 912 (Tex. 1997).
10. Johnson v. Fuselier, 83 S.W.3d 892, 898
(Tex. App.--Texarkana 2002, no pet.); Jones v. Ray Ins. Agency, 59
S.W.3d 739, 749 (Tex. App.--Corpus Christi 2001, pet. denied); Rose v. Kober
Fin. Corp., 874 S.W.2d 358, 361-62 (Tex. App.--Houston [14th
Dist.] 1994, no writ).
11. Tex. R. Civ. P. 63.
12. Rose, 874 S.W.2d at 361; Jones v.
Houston Materials Co., 477 S.W.2d 694, 695 (Tex. Civ. App.--Houston [14th
Dist.] 1972, no writ); see also Leche v. Stautz, 386 S.W.2d 872, 873
(Tex. Civ. App.--Austin 1965, writ ref'd n.r.e.).
13. See Tex. R. Civ. P. 4 (stating that the
computation of time does not include the day of the event, which in this case is
the filing of the amended petition and counterclaim, but the last day of the
period is included).
14. See Johnson, 83 S.W.3d at 898.
15. See Nootsie, Ltd. v. Williamson County Appraisal
Dist., 925 S.W.2d 659, 661 (Tex. 1996) (stating that a party has capacity
when it has the legal authority to act); see also Mackie v. Guthrie, 78
S.W.3d 462, 465 (Tex. App.--Tyler 2001, pet. denied).
16. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983).
17. S.W. Sav. Ass'n v. Dunagan, 392 S.W.2d 761, 767 (Tex.
Civ. App.--Dallas 1965, writ ref'd n.r.e.).
18. Coker, 650 S.W.2d at 393.
19. Id.
20. Id.
21. Id.
22. Id. at 394.
23. Hohenberg Bros. Co. v. George E. Gibbons &
Co., 537 S.W.2d 1, 3 (Tex. 1976).
24. Id.
25. Id.
26. Id.
27. Id.
28. See id. (stating that forfeiture is not
favored).
29. Coker, 650 S.W.2d at 394.
30.See Elliott-Williams, 9 S.W.3d at 803.
31. Formosa Plastics Corp. USA v. Presidio Eng'rs
& Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998); DeSantis v.
Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990), cert. denied,
498 U.S. 1048, 111 S. Ct. 755 (1991).
32. 896 S.W.2d 156, 161 (Tex. 1995).
33. Id. at 162.
34. Id.
35. See Elliott-Williams, 9 S.W.3d at 803.
36. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a)
(Vernon 1997).
37. Boatman v. Lites, 970 S.W.2d 41, 43 (Tex.
App.--Tyler 1998, no pet.).
38. See id.
39. Tex. Civ. Prac. & Rem. Code Ann. §16.069.
40. Id.
41. Id. § 16.068.
42. Tex. Bus. & Com. Code Ann. § 17.565 (Vernon
2002); Tex. Civ. Prac. & Rem. Code Ann. §16.003 (Vernon 2002).