

NUMBER 13-13-00234-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

AMERICAN GENERAL
LIFE INSURANCE COMPANY,                                          Appellant,

v.

JUAN J. MANCILLAS, M.D., ET AL.,                                 Appellees.

On appeal from the 332nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion by Justice Benavides**

American General Life Insurance Company ("American General") appeals the trial court's summary judgment in favor of appellees Juan J. Mancillas, M.D. and Sylvia Mancillas, individually, and as next friends of Carlo Landa Mancillas and Omar Landa Mancillas (hereinafter "the Mancillases," unless otherwise noted). We reverse and

render.

## I.   BACKGROUND

The present case is the last in a series of four lawsuits filed by the Mancillases against American General.[1]   In 2005, the Mancillases filed the original lawsuit (Mancillas I) against American General, the National Heritage Foundation, Inc., and others related to the interests of two life insurance contracts.   The Mancillases eventually obtained an approximately $9 million jury verdict against the National Heritage Foundation and another party related to the claims brought forth in Mancillas I.

On August 18, 2008, American General and the Mancillases settled Mancillas I by a Rule 11 agreement, in which American General agreed to pay the Mancillases $150,000 for a dismissal and the release of all claims against it.   On that same day, American General made a separate offer to rescind the policies in dispute in Mancillas I. The written offer from American General's counsel to the Mancillases' counsel stated the following:

> I write to memorialize the intent of American General Life Insurance
> Company and Juan and Sylvia Mancillas ("Mancillases"), on behalf of the
> Mancillas Family Trust, to enter into a contract regarding the two American
> General's life insurance policies currently in force and insuring the
> Mancillases ("Policies").   In the putative contract, American General will
> agree to rescind the Policies if the [trial court of *Mancillas I*] declares and
> adjudges [in Mancillas I] that the Mancillas Family Trust is the owner of the
> Policies as [a] matter of law.   Upon such a declaration and within thirty
> (30) days of its adjudication, American General, at the request of the
> Mancillases, will rescind the Policies and return the premiums paid, less
> $150,000, plus interest, to them.   However, in the event of any appeal
> regarding said adjudication, the Mancillases agree to indemnify American
> General should such adjudication be reversed or modified.   The putative
> contract will not be related to or dependent on the Confidential Settlement
> and Release Agreement to be entered into by the parties resolving

---

[1] Only the first and fourth lawsuits in this series are relevant to the present appeal.   Therefore, we will only address those two lawsuits in this memorandum opinion.   *See* TEX. R. APP. P. 47.7.

plaintiffs' claims against American General in [Mancillas I]. If this accurately comports with your understanding of our agreement, please sign where indicated below and return this letter to me.

On September 16, 2008, counsel for the Mancillases wrote an email response to

one of American General's attorneys and stated the following in relevant part:

[The August 18, 2008] agreement does not reflect what you and I discussed. You will recall that my concern was that our clients cannot agree to surrender something they do not own and that we can't agree to own something that we don't because of how that would affect their case against [the National Heritage Foundation].

I recall you thought about it over a weekend and came up with a solution that should be acceptable to our client and mine. I'm sure I have it written down somewhere but there is a pile of paper on my desk that accumulated while I was in trial. Refresh my memory so I can talk to my clients about what they want to do. Thanks.

On September 23, 2008, counsel for the Mancillases sent a more detailed letter

regarding the August 18, 2008 offer to another of American General's counsel, which

stated the following:

Now that the trial against [the National Heritage Foundation] is over and I've had a chance to review your letter of August 18, 2008, I want to address certain issues. Your letter does not accurately reflect the discussions that [American General's counsel] and I had nor the representations he made that induced my clients to agree to settle their lawsuit against American General. Since you did not participate in any of my discussions with Michael, I understand why you might have drafted a letter that does not even resemble what Michael and I discussed. I will try to address each issue in your letter.

First, neither me nor my clients ever agreed to seek a declaration that the Mancillas Family Trust was the Owner of either policy. Throughout this litigation I have taken the position that the Mancillas Family Trust was not the Owner after various unilateral actions that [the National Heritage Foundation] took. I've always said that the only way a court can declare one to be the Owner is through the interpretation of the language in the policy. The policy's language does not address the situation that occurred here where [the National Heritage Foundation] relinquished everything without naming a successor Owner. Therefore, there is no Owner and I cannot agree to try to seek a declaration that the Mancillas Family Trust is

3

the Owner. I've said that to you a hundred times and I repeated that to Michael in clear terms.

Second, we never discussed seeking a declaration from the 404th Court in this very litigation. I am not willing to keep this case going in the district court just for a declaratory judgment that your client is still trying to get. I have a $9 million verdict that I'm sure [the National Heritage Foundation] is going to appeal. I would like that appeal to get started and don't want it delayed because your client insists that a declaratory judgment be resolved in this very case. If there is a declaratory judgment, it will have to be done in a different case by a different court.

Third, what [counsel] expressed was that American General wanted to be relieved of the possibility of paying the death benefits to the Sisters of the Incarnate Word, who is the current beneficiary. He and I discussed that his concern can be addressed by an agreement that that policies were terminated or rescinded in January 2000 when [the National Heritage Foundation] relinquished its ownership. You, your client and your expert all took the position that the policy cannot be without an Owner. The lack of an Owner effectively terminates or rescinds the policy. Therefore, we can agree that by virtue of the Court's existing declaratory judgment that [the National Heritage Foundation] relinquished its ownership in January 2000, that the policy does not provide for a successor Owner when the current Owner relinquishes its ownership without naming a successor Owner, and that the policy requires an Owner, in order to pay premiums and take the various actions that are required of an Owner, the policies were terminated and rescinded on January 12, 2000. Because the policies have already been terminated, your letter should not make reference to American General agreeing to "rescind" the policies. They have already been terminated and rescinded.

Please draft an agreement that accurately sets forth the discussions that [American General's counsel] and I had. Call me if you have any questions.

On October 9, 2008, the Mancillas I trial court entered a final judgment against the National Heritage Foundation. On February 2, 2009, counsel for the Mancillases sent another email to American General's counsel which stated the following:

As I said in our phone call AG would be protected if the Sister's [sic] released the death benefits. Please think about what other concerns AG would have and let's see if we cannot come up with a solution that would addresses [sic] AG's concerns yet allow us to also serve our client's interest in being paid the $220,000.

4

In response, counsel for American General replied to the Mancillases' attorney with the following email on February 11, 2009:

> I have considered your proposal to have Sister's [sic] release the death benefits on the policies insuring the lives of your clients and spoken with my client. While I appreciate your proposal, it does not adequately address American General's concerns regarding the ownership of the policies. We remain willing to consider the proposal that was discussed with Michael, and which was memorialized in our August 18, 2008 letter. If the Court declares the Mancillas Family Trust the Owner of the policies, American General will agree to rescind the policies and return the premiums less the $150,000 you were paid in settlement subject to the terms and conditions set forth in that letter. Without a declaration of ownership, American General's concerns cannot be adequately addressed. I would be happy to discuss this with you further at your convenience.

On January 5, 2010, the Mancillases and the National Heritage Foundation entered into a settlement agreement related to Mancillas I. The National Heritage Foundation, which had filed for Chapter 11 bankruptcy after the final judgment in Mancillas I, agreed, among other consideration, to pay the Mancillases $3 million to settle the Mancillas I judgment. Additionally, the settlement agreement with the National Heritage Foundation recited that the Mancillases had "no claim to or any interest in the insurance policies" at issue and that the National Heritage Foundation was "the sole owner" of the life insurance policies.

On September 3, 2010, the National Heritage Foundation and the Mancillases entered into a separate agreement, in which the National Heritage Foundation agreed to surrender the life insurance policies at issue for the cash surrender value of the policies, if the National Heritage Foundation was successful in a separate pending lawsuit. On November 22, 2010, the National Heritage Foundation surrendered and cancelled the life insurance policies at issue.

5

On January 31, 2011, the Mancillases' attorney sent the surrender forms to American General's counsel and stated that the Mancillases satisfied "the terms of the settlement agreement between the Mancillas family and [American General]." Furthermore, the Mancillases sought "all of the premiums paid" on the two life insurance policies by February 4, 2011. On February 21, 2011, the Mancillases filed the instant suit against American General and alleged causes of action for fraud, breach of contract, and promissory estoppel related to the August 18, 2008 offer. On February 23, 2011, American General responded to the Mancillases' January 31, 2011 letter, rejected the Mancillases' interpretation of the August 18, 2008 offer, and noted that the offer contained a condition precedent to rescission of the contract and return of the premiums.

On January 17, 2012, American General filed a motion for summary judgment on the ground that the Mancillases' claims were based upon unenforceable oral promises. The Mancillases filed a response to American General's motion, as well as their own motion for summary judgment, asserting that they accepted American General's August 18, 2008 offer when they secured the surrender of both life insurance policies. The trial court denied American General's motion and subsequently granted the Mancillases' motion for summary judgment, after concluding that an agreement was formed from the August 18, 2008 offer when the Mancillases obtained the surrenders on the two life insurance policies. The Mancillases then nonsuited their fraud and promissory estoppel claims. This appeal followed.

## II.   SUMMARY JUDGMENT

6

By one issue, American General contends that the trial court erred in granting the Mancillases' motion for summary judgment and denying American General's motion for summary judgment.

## A.  Standard of Review

We review the trial court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  When both sides move for summary judgment and the trial court grants one and denies the other, we review both sides' summary judgment evidence and determine all questions presented.  *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).  If we determine that the trial court erred, we will render the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661.

## B.  Discussion

To prevail on a breach of contract claim, a plaintiff must prove:   (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.  *First Nat'l Bank of Edinburg v. Cameron Cnty*., 159 S.W.3d 109, 112 (Tex. App.—Corpus Christi 2004, pet. denied).   The further requisites for a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.*

American General asserts that the Mancillases' breach of contract claim fails as a matter of law because the Mancillases did not accept its August 18, 2008 offer to enter into a bilateral contract.   The Mancillases assert that the offer contemplated a unilateral

contract, they were free to accept the offer in any manner that conveyed their assent, and they "performed the offer."

We first examine the distinction between bilateral and unilateral contracts. "A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor and a promisee." *Vanegas v. Am. Energy Svcs.*, 302 S.W.3d 299, 302 (Tex. 2009) (internal quotations omitted). A unilateral contract is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Id.* Here, we conclude that the August 18, 2008 offer contemplated a bilateral contract that involved mutual promises between American General and the Mancillas: American General agreed to rescind the policies if the trial court in Mancillas I declared and adjudged that the Mancillas Family Trust was the owner of the policies as matter of law within thirty days of the declaration; and the Mancillases agreed to indemnify American General should such adjudication be reversed or modified. The offer does not contemplate a unilateral contract, as the Mancillases contend, because acceptance is not contingent upon the Mancillases' performance or forbearance. *See id.* (quoting 1 RICHARD LORD, WILLISTON ON CONTRACTS § 1.17 (4th ed. 2007) ("A unilateral contract occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance or forbearance.")).

Next, we turn to the nature of the offer itself and the corresponding manner of acceptance. The relevant portion of the offer states the following:

> In the putative contract, American General will agree to rescind the Policies if the [trial court of Mancillas I] declares and adjudges [in Mancillas I] that the Mancillas Family Trust is the owner of the Policies as matter of law. Upon such a declaration and within thirty (30) days of its adjudication,

8

American General, at the request of the Mancillases, will rescind the Policies and return the premiums paid, less $150,000, plus interest, to them. However, in the event of any appeal regarding said adjudication, the Mancillases agree to indemnify American General should such adjudication be reversed or modified. The putative contract will not be related to or dependent on the Confidential Settlement and Release Agreement to be entered into by the parties resolving plaintiffs' claims against American General in [Mancillas I]. If this accurately comports with your understanding of our agreement, please sign where indicated below and return this letter to me.

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). "Conditions may, therefore, relate either to the formation of contracts or to liability under them." *Id.* Conditions precedent to an obligation to perform are those acts or events which occur subsequently to the making of a contract that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Id.*

While no particular words are necessary for the existence of a condition, such terms as "if", "provided that", "on condition that", or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties.

*Id.*

In this case, American General offered to promise to rescind the polices at issue if the Mancillas I trial court declared and adjudged the Mancillas Family Trust as the owner of the policies as a matter of law. This amounted to a condition precedent to the formation of the contract. Furthermore, the offer required the Mancillases to request rescission and payment of the premiums within thirty days of the Mancillas I trial court's declaration of ownership of the policies. This amounted to a second condition

9

precedent on American General's obligation to perform, conditioned upon the Mancillas I trial court's adjudication and declaration that the Mancillas Family Trust was the owner of the policies.

The record is clear and undisputed that neither of these conditions precedent took place in this case. Moreover, the January 5, 2010 settlement agreement between the Mancillases and the National Heritage Foundation recited that the National Heritage Foundation was "the sole owner" of the life insurance policies. The conditions precedent that trigger the August 18, 2008 offer are absent. Without them, no contract was formed, and likewise, American General had no obligation to perform. *See id.*

Accordingly, we conclude that the trial court erred in granting the Mancillases' motion for summary judgment and in denying American General's motion for summary judgment. American General's sole issue on appeal is sustained.

### III.    CONCLUSION

We reverse the trial court's order granting the Mancillases' motion for summary judgment, and we render judgment that because no contract arose from the August 18, 2008 offer, American General is entitled to summary judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
20th day of November, 2014.

10