

# NUMBER 13-11-00673-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

VALIANT PETROLEUM, INC.,                                    Appellant,

v.

FMC TECHNOLOGIES, INC., ET AL.,                            Appellees.

# NUMBER 13-11-00674-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

VALIANT PETROLEUM, INC.,                                    Appellant,

v.

MICHAEL McCORMICK, WADE
WILLIAMS, PABLO FERNANDEZ,
JEFF McKENZIE, AND DALE SUMPTER,                           Appellees.

VALIANT PETROLEUM, INC.,                                                    Appellant,

v.

FMC TECHNOLOGIES, INC.,                                                    Appellee.

On appeal from the 117th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Longoria
### Memorandum Opinion by Justice Benavides

This appeal involves a contractual dispute between appellant, Valiant Petroleum, Inc. ("Valiant") and appellees, FMC Technologies, Inc., Michael McCormick, Wade Williams, Pablo Fernandez, Jeff McKenzie, and Dale Sumpter (collectively "FMCTI"). By six issues, Valiant appeals the trial court's orders granting FMCTI's partial motion for summary judgment and other requested declaratory relief and denying Valiant's partial motion for summary judgment and declaratory relief. We reverse and render, in part, and affirm, in part.

# I.    BACKGROUND

## A.    Underlying Dispute and Settlement Agreement

In April 2010, representatives acting on behalf of Valiant and FMCTI signed a written settlement agreement ("the agreement")—prepared and reviewed by each party's respective counsel—that resolved a pending lawsuit in Nueces County district court.[1]  The seven-page agreement imposed several obligations and duties upon both parties.

Paragraph 3(A) of the agreement provided, in relevant part, that Valiant promised to pay FMCTI the principal sum of four-hundred thousand dollars ($400,000), in addition to any sums articulated in Paragraph 3(B), to be used to cover Valiant's expenses through the end of June 2010.  The paragraph further stated that "[t]hese borrowings in terms of repayment and security would be treated similar [sic] to advances under the line of credit . . . ."  The paragraph outlined a repayment schedule specifically related to the $400,000 over three payment deadlines.

Paragraph 3(B) of the agreement provided, in relevant part, that Valiant promised to pay FMCTI the principal sum of $2 million, "or so much thereof as may be disbursed to," for the benefit of Valiant's subcontractors, vendors, and/or suppliers on the projects by FMCTI."  As in Paragraph 3(A), this sum created a "line of credit agreement" between Valiant and FMCTI.  According to the agreement, the discretion to lend such money rested with FMCTI.  The paragraph outlined a monthly repayment schedule, assuming that the full $2.4 million was owed, beginning on January 1, 2011.

---

[1] The lawsuit was brought by Valiant against FMCTI and other parties wherein Valiant alleged that more than $1 million in unpaid change orders were due.  The change orders related to an oil project off the coast of Angola known as the "PAZFLOR project" in which Valiant served as a subcontractor to FMCTI.

**B. Present Dispute**

On December 28, 2010, Valiant filed suit against FMCTI and other individuals asserting various claims of promissory fraud, fraud in the inducement, and breach of a settlement agreement. Valiant alleged in its original petition that the settlement agreement included consideration of "future no-bid negotiated work" promised by FMCTI and its officers during negotiations of the agreement. According to Valiant's petition, FMCTI promised future jobs to Valiant that were worth in the gross range of $8–10 million for 2010. Valiant further asserted that, without such oral assurances, Valiant would not have signed the agreement. As a result, Valiant claimed that FMCTI did not comply with the terms of the agreement that addressed future jobs. Valiant also sought a bill of review, made claims against other parties not subject to this appeal, and a declaration of its rights under "the various instruments as they may have been amended in oral communications or written communications, including the waiver of any written terms of such agreements."

FMCTI answered Valiant's lawsuit and asserted several affirmative defenses, counterclaims. It also sought a declaratory judgment that the agreement reached was binding and without ambiguity.

Valiant thereafter filed its first amended original petition, which specifically requested the trial court to construe the meaning of the term "potential future projects" and "what the parties intended" by using that term in the settlement agreement. The disputed term is found in a clause on the first page of the agreement which provides, in relevant part:

> **WHEREAS,** FMCTI as general contractor and VALIANT as FMCTI's subcontractor, in view of their business relationship on the

PAZFLOR PROJECT and *any other current or potential future projects*, desire to settle, compromise and resolve as full and final settlement of claims as set forth herein and in VALIANT'S lawsuit against FMCTI and FMCTI's temporary injunction on an amicable basis, without admission of any fact, liability or responsibility of any kind on each Party's part.

(Emphasis added.)

On May 20, 2011, FMCTI filed a partial motion for summary judgment and sought dismissal of Valiant's claims that were based on any oral agreement that could not be performed within one year under the Statute of Frauds, Texas Rule of Civil Procedure 11, and/or the Parol Evidence Rules.[2] FMCTI attached evidence that supported why the alleged oral agreement on future work could not be completed within one year of the date of the written contract (April 12, 2010), including:

(1) an affidavit from Valiant's former president, Cole Leath, who stated, among other things, that the future projects and work would continue "indefinitely into the future;"

(2) various discovery responses from Valiant which stated that it was damaged "because it did not receive $2 million in anticipated profit in 2010 "and at similar levels during each of the ensuing years for the foreseeable future; and

(3) Valiant's First Amended Petition which alleged oral promises that went from 2011 "and beyond;"

FMCTI also sought a declaration of rights and duties under the settlement agreement. More specifically, FMCTI requested that the disputed "potential future projects" language be interpreted and construed "exactly as written and declare that [it] means exactly that, [and] nothing more." FMCTI contended that the parties agreed that it was "possible they may or may not do business in the future and the settlement

---

[2] FMCTI asserted in its motion that a ruling in its favor would extinguish all of Valiant's claims, but not FMCTI's breach of the written settlement agreement, including fraud, fraud in the inducement, promissory estoppel, breach of contract based on the alleged oral agreement, and its request for a bill of review.

5

agreement did not foreclose that possibility." FMCTI also asked the trial court to declare that the agreement's language stated clearly that "no waiver shall be binding unless executed in writing by the party" and that the settlement agreement language expressly stated that it could not be modified without a signed writing. FMCTI further requested that other clauses be interpreted exactly as written, without any ambiguity.

In its response to FMCTI's motion for partial summary judgment, Valiant asserted that (1) the recitals, including the disputed "potential future projects" term, were made operative parts of the agreement; (2) that an "integration" or "merger" clause was absent from the agreement; and (3) the agreement did not include a "disclaimer of reliance on oral representations clause." Based on these arguments, Valiant contended that the parties either intended the writing to be supplemented by parol evidence, or did not expressly exclude parol evidence, to determine the parties' rights and obligations under the disputed "potential future projects" term.

Valiant further asserted that during the negotiations preceding the signing of the settlement agreement, FMCTI knew that "Valiant was unlikely to be able to pay back any debt arising out of any settlement unless Valiant was provided a source of income and source of financing," and therefore, FMCTI discussed providing Valiant with single-source projects to help it pay back any obligation incurred under the settlement agreement. Valiant asserted that the term "potential future projects" was vague and ambiguous as a matter of law and required the trial court to look to extrinsic or parol evidence to show its intent.

Valiant's response included an affidavit by Valiant's former president Leath. In the affidavit, Leath asserted that while the agreement was being formulated FMCTI's

6

representative, Dale Sumpter, told him that he would not make "SPECIFIC projects EXPRESSLY part of the settlement agreement, but he understood [other FMCTI employees] were to provide such projects." (Emphasis in original.) Valiant also attached affidavits from Valiant co-owners Jeff Soward and Roel Basaldua, as well as former Valiant Operations Manager William Hudson, who all testified about the negotiations leading up to the signing of the settlement agreement, including about the future, no-bid work that FMCTI was to provide to Valiant.

On June 15, 2011, the trial court heard FMCTI's motion for partial summary judgment and took the matter under advisement. Following the hearing, Valiant filed its own motion for partial summary judgment and declaratory relief that sought, *inter alia*:

(1) that the "potential future projects" term was vague, ambiguous, or uncertain and that the trial court should either (a) declare as a matter of law that the parties intended to provide for such no-bid, negotiated work, or single source projects for 2010 and the "foreseeable future," or (b) leave it as a matter to be determined by a jury; and

(2) the parties intended to make the promises of "current and potential future projects" an operative term, consideration, and/or promise of the parties settlement agreement, and if so, the rights involved with that term.

Valiant filed a second amended petition on June 17, 2011, which added claims of breach of contract/promissory fraud under the "potential future projects" language, partial integration, and estoppel. Valiant filed a third amended petition on June 27, 2011 which added a claim of "string along" fraud. On August 4, 2011, the trial court's clerk advised the parties of the trial court's ruling in favor of FMCTI's partial motion for summary judgment and instructed FMCTI to prepare an order for the trial court's signature. On August 19, 2011, Valiant filed a fourth amended petition.

7

On September 23, 2011, the trial court held a hearing on Valiant's amended motion for partial summary judgment and declaratory relief. That same day, the trial court: (1) signed orders granting FMCTI's motion for summary judgment, denying Valiant's motion for partial summary judgment, and dismissing with prejudice Valiant's claims based on any alleged oral agreement, promise, or claim related to future no-bid work; and (2) struck Valiant's second, third, and fourth petitions and ordered Valiant to amend its petition to "include only claims that the [trial court] has not dismissed by its rulings . . . and to remove allegations that only relate to the claims that the [trial court] has dismissed." The trial court signed two separate severances and final judgments—the first, on Valiant's claims against FMCTI employees McCormick, Williams, Fernandez, McKenzie, and Sumpter; and the second on Valiant's claims against FMCTI. The orders severed Valiant's claims against FMCTI employees and FMCTI into a new cause numbers, disposed of all claims and parties, and became final and appealable judgments. This appeal followed.

## II.    STRIKING OF VALIANT'S AMENDED PLEADINGS

By its first issue, Valiant contends that the trial court abused its discretion in applying Texas Rule of Civil Procedure 63 to strike its pleadings filed after the hearing on FMCTI's motion for partial summary judgment.

### A. Applicable Law and Standard of Review

A party may amend their pleadings, provided that they are filed within seven days of the date of trial, or thereafter, only after obtaining leave of court. TEX. R. CIV. P. 63. A summary judgment proceeding is a "trial" within the meaning of Rule 63. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988); *see Brown v. Ultramar*

8

*Diamond Shamrock Corp.*, No. 13-02-535-CV, 2004 WL 1797580, at *2 (Tex. App.—Corpus Christi Aug. 12, 2004, no pet.) (mem. op.).

The trial court's decision under Rule 63 is discretionary and will not be disturbed on appeal unless a party shows a clear abuse of discretion. *See Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980); *Merit Drilling Co. v. Honish*, 715 S.W.2d 87, 91 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.); *Perez v. Embree Const. Group, Inc.*, 228 S.W.3d 875, 882 (Tex. App.—Austin 2007, pet. denied). When amendments which introduce new substantive matter have been refused by the trial court under Rule 63, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise. *Hardin*, 597 S.W.2d at 349.

**B. Discussion**

Valiant argues that the general principles of Rule 63 apply to cases in which a motion for summary judgment is dispositive upon the entire case, not a severable portion, as in this case. We disagree. A summary judgment hearing is a trial within the meaning of Rule 63. *Goswami*, 751 S.W.2d at 490. This procedural rule may extend to hearings on motions for partial summary judgment. *See Nairn v. Killeen Ind. Sch. Dist.*, 366 S.W.3d 229, 249 (Tex. App.—El Paso 2012, no pet.) (finding no abuse of discretion after trial court struck appellant's petition for not seeking leave after a trial court's ruling on a motion for partial summary judgment); *Cherry v. McCall*, 138 S.W.3d 35, 42–43 (Tex. App.—San Antonio 2004, pet. denied) (upholding a trial court's striking of appellant's amended pleadings which added causes of action, after a hearing and order on a take-nothing partial summary judgment). Here, it is undisputed that Valiant filed its

9

second and third amended petitions after the summary judgment hearing and its fourth amended petition after the parties had been advised by the trial court of its rulings.

Next, Valiant argues that the trial court ignored the effect of Valiant's response to FMCTI's motion for partial summary judgment filed on June 7, 2011. In its response, Valiant "raised some of the same theories that had been asserted" in the stricken pleadings. *See also Luna v. Gunter Honey, Inc.*, No. 09-05-207-CV, 2005 WL 3490126, at *1 (Tex. App.—Beaumont Dec. 22, 2005, pet denied) (mem. op.) ("[I]f the nonmovant raises a new theory for the first time in its response to a motion for summary judgment, and does not amend its pleadings to include this additional theory of recovery, the new theory of recovery is not considered at issue before the trial court when the trial court rules on the motion for summary judgment.") (citing *Jones v. Wal-Mart Stores, Inc.*, 893 S.W.2d 144, 147 (Tex. App.—Houston [1st Dist.] 1995, no writ)). Our review of the record does not show that Valiant raised new theories in its response to FMCTI's motion for partial summary judgment.

Finally, Valiant asserts that the trial court abused its discretion by striking its pleadings in contravention of the agreed docket control order. According to the record, the trial court signed a docket control order which provided that the last day for a party to amend its pleadings was February 17, 2012. We find this argument unpersuasive. The record is clear that Valiant acted without leave of the trial court by amending its petition three times after a hearing on summary judgment and of being advised of the trial court's order. *See* TEX. R. CIV. P. 63; *Goswami*, 751 S.W.2d at 490. Further, the claims asserted in the amended pleadings were those that did not survive the trial court's order on FMCTI's motion for partial summary judgment.

Accordingly, we conclude that the trial court did not abuse its discretion by striking Valiant's amended pleadings under Texas Rule of Civil Procedure 63. Valiant's first issue is overruled.

## III. CONTRACT INTERPRETATION

By its remaining issues, Valiant attacks the trial court's judgment related to the competing motions for summary judgments and declaratory actions related to the settlement agreement.

### A. Standard of Review and Applicable Law

When both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered. *Tex. Worker's Comp. Comm'n v. Patient Advocs. of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)). When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props.*, 22 S.W.3d at 872.

In construing a contract, we ascertain and give effect to the parties' intentions as expressed in the writing itself. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805–06 (Tex. 2012) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 333 (Tex. 2011)). To discern the parties' intent, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (quoting

11

*J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003)) (internal quotation marks omitted).

Our analysis begins with the contract's express language.  *See id.*  If we determine that the contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law.  *See id.*  But "if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent."  *J.M. Davidson,* 128 S.W.3d at 229; *see Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 120 (Tex. App.—Corpus Christi 1999, pet. denied).  Whether a contract is ambiguous is a question of law.  *J.M. Davidson,* 128 S.W.3d at 229 (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). A disagreement over the meaning of a contract provision does not render the provision ambiguous.  *Pegasus Energy*, 3 S.W.3d at 120*.*  Ambiguity in a contract may be "patent" or "latent."  Patent ambiguity is evident on the face of the contract.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter.[3]  *Id.*  When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.  *Coker*, 650 S.W.2d at 394 (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980)).

---

[3] An example of a latent ambiguity is if a contract called for goods to be delivered to "the green house on Pecan Street," and there were in fact two green houses on the street.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 n. 4 (Tex. 1995).

12

**B. Discussion**

**1. Ambiguity**

Valiant asserts by issues two and three that the trial court erred in determining that the phrase "other current or potential future projects" in the settlement agreement was unambiguous, not vague, and certain as a matter of law and that it in fact, created no enforceable promises as a matter of law.

After applying the rules of construction, we conclude that the disputed phrase is neither patently nor latently ambiguous, nor reasonably susceptible to more than one interpretation. *See Pegasus Energy*, 3 S.W.3d at 120. Our reading of the entire instrument shows that FMCTI and Valiant had prior business relationships—more specifically, the ADCOP Project and the PAZFLOR Project—which pre-dated the settlement agreement and were ongoing at the time of the settlement. Both parties agreed that a dispute arose related to change orders, payment, cause of and responsibility for design changes, or field changes all related to the PAZFLOR Project. As a result, the parties inserted the following declaration on the first page of its settlement agreement:

> FMCTI . . . and Valiant . . . in view of their business relationship on the PAZFLOR Project and *any other current or potential future projects*, desire to settle, compromise and resolve as full and final settlement of all claims as set forth herein and in Valiant's lawsuit against FMCTI . . . without admission of any fact, liability or responsibility of any kind on each Party's part. (emphasis added.)

Valiant's arguments focus on the phrase "any other current or potential future projects." It contends that this phrase was intentionally left ambiguous as a result of the settlement negotiations, and required parol and extrinsic evidence to further explain its meaning. We disagree and construe the above-referenced declaration as merely a

recital[4] as to why the parties chose to settle their pending dispute and the nature of Valiant and FMCTI's business relationship on the PAZFLOR and ADCOP Projects (current projects), and any potential future projects which may arise in the future, without any affirmation that any future projects would come to fruition.[5] However, we agree with Valiant and FMCTI that this recital became an "operative, substantive part" of the settlement agreement by virtue of Paragraph 12(G) of the agreement which states, in pertinent part:

> The recitals set out in this SETTLEMENT AGREEMENT constitute part of the SETTLEMENT AGREEMENT. (Emphasis in original.)

Accordingly, we conclude that the disputed phrase is unambiguous because it is has a certain, definite meaning and interpretation. *See J.M. Davidson*, 128 S.W.3d at 229. Valiant's second and third issues are overruled.

## 2. Parol Evidence

By its fourth issue, Valiant asserts by various arguments that the trial court erred in failing to consider parol evidence in any part of the summary judgment proceeding, regardless of whether the disputed phrase was unambiguous.

As a general rule for an unambiguous contract, evidence of prior or contemporaneous agreements is inadmissible as parol evidence. *See ERI Consulting Engr's, Inc. v. Swinnea*, 318 S.W.3d 867, 875 (Tex. 2010); *David J. Sacks, P.C. v.*

---

[4] In contract terms, a "recital" is "[a] preliminary statement in a contract or deed explaining the reasons for entering into it or the background of the transaction, showing the existence of particular facts. . . . Traditionally, each recital begins with the word *whereas.*" *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.) (quoting BLACK'S LAW DICTIONARY 1289 8th ed. 2004).

[5] While our decision today affirms the trial court, we do not agree with Valiant that such a conclusion means "nothing." To the contrary, our interpretation and analysis is guided by the principle that we "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

14

*Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports."). Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *Id.* (internal citations omitted).

First, Valiant argues that the trial court "blinded itself to the facts and circumstances of the settlement agreement which informed, rather than varied or contradicted, the settlement agreement's language." We disagree. As indicated above, the disputed phrase is unambiguous, definite, and expresses the parties' intentions. Valiant's attempt to introduce parol evidence about what took place during the pre-settlement negotiation phase clearly contradicts this conclusion. *See Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) ("The [Parol Evidence Rule] does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text.").

Next, Valiant cites case law which holds that the parol evidence rule operates only to exclude evidence regarding operative legal transactions, but not mere statements or recitals of fact. *See Carr v. Christie*, 970 S.W.2d 620, 625 (Tex. App.—Austin 1998, pet. denied) (citing *Lindsay v. Clayman*, 151 Tex. 593, 596 (1952)). Valiant argues that as a result of the disputed phrase being both a recital and an operative and substantive part of the settlement agreement, it "has the benefit of both worlds," and is entitled to reference parol evidence. In light of our earlier conclusion that the disputed phrase is unambiguous and that the recital became an operative part of the

15

settlement agreement, we find *Carr* distinguishable and decline Valiant's invitation to look to parol evidence to determine the true intent of the parties. *See CBI Indus.*, 907 S.W.2d at 520 ("Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation . . . and admit extraneous evidence to determine the true meaning of the instrument.") (internal citations omitted).

Valiant also argues that the trial court failed to consider parol evidence to construe the terms "current or potential future projects" to the degree that these projects were consideration for the settlement agreement. Parol evidence may be considered "to show want or failure of consideration, and to establish the real consideration given for an instrument." *Audubon Indem. Co. v. Custom Site-Prep, Inc.*, 358 S.W.3d 309, 316 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). In this case, the settlement agreement provides numerous paragraphs (Paragraphs 1–14) which expressly address consideration and the mutual obligations imposed on each party. Therefore, we do not agree with Valiant's position that "current or potential future projects" was consideration under the settlement agreement to allow the admission of parol evidence.

Next, Valiant argues that the trial court erred in failing to allow parol evidence to show promissory fraud. Under limited exceptions, such as fraud, accident, or mistake, parol evidence may be allowed as consideration to interpret a written agreement. *See DeClaire v. G & B Mcintosh Family Ltd. P'ship*, 260 S.W.3d 34, 45 (Tex. App.—Houston [1st Dist.] 2008, no pet.). To recover on an action for fraud, Valiant must prove that (1) FMCTI made a material representation that was false; (2) it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) it intended to induce Valiant to act upon that representation; and (4) Valiant

16

actually and justifiably relied upon the representation and thereby suffered injury.  *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). FMCTI counters that Valiant is unable as a matter of law to rely on the fraud exception to allow for parol evidence because it cannot justifiably rely upon an oral statement that is "clearly inconsistent with conspicuous provisions" of the settlement agreement.  We agree.

In order to vitiate a contract, the fraud "must be something more than merely oral representations that conflict with the terms of the written contract."  *Schlumberger Tech. Corp. v. Swanson*, 956 S.W.2d 171, 179 (Tex. 1997).  Instead, the fraud must such that it "prevents the coming into existence of any valid contract at all."  *Id.* (internal quotations omitted).  Here, Valiant seeks to establish its fraud claim based upon parol evidence from oral representations, purportedly discussed during the negotiation of the settlement agreement, that conflict with the terms of the settlement agreement.  We hold that this argument is not enough to admit parol evidence because it is the very definition of what the rule is designed to keep out.

Accordingly, we overrule Valiant's fourth issue.

### 3.  Declaratory Relief

By its fifth issue, Valiant asserts that the trial court erred by denying its request for declaratory relief that (1) the term "other current or potential future projects" did not mean the ADCOP project or the PAZFLOR project as a matter of law; and (2) that "other current or potential future projects" were "part of" the settlement agreement.

Our analysis under Part III-B(1) of this opinion addresses this issue.  First, we construed the term "other current or potential future projects" to mean the ADCOP

17

project, in addition to the PAZFLOR project. Regardless of other express references to the ADCOP project, we examined and considered the entire writing and concluded that the ADCOP project was a "current" project referenced in the recital. *See generally El Paso Field Servs.*, 389 S.W.3d at 805–06. Second, we agree with Valiant that the recitals constitute a part of the settlement agreement as clearly expressed under Paragraph 12(G) of the settlement agreement. We do not agree, however, that the recitals constitute consideration, as explained earlier in this opinion.

Accordingly, Valiant's fifth issue is overruled, in part, and sustained, in part.

### 4. Payment Provisions

By its final issue, Valiant contends that the trial court erred in construing Paragraphs 3(D) and 3(E) of the settlement agreement with regard to the terms of the repayment of Valiant's incurred debt to FMCTI.

Paragraph 3(D) of the settlement agreement states:

> Interest on any borrowings under the LINE OF CREDIT shall be computed as follows: from January 1, 2011 to December 31, 2011, interest shall be 3% simple interest and from January 1, 2012 to December 31, 2012, interest shall be 5% simple interest. All unpaid principal and interest shall be paid to FMCTI by December 31, 2012.

Paragraph 3(E) of the settlement agreement states, in pertinent part: "The principal balance and interest on this LINE OF CREDIT assuming that the principal owed to FMCTI is $2,400,000.00, shall be due and payable by VALIANT to FMCTI as follows," with the remaining sub-paragraphs under Paragraph 3(E) detailing the terms repayments from January 1, 2011 to December 1, 2011.

Paragraph 3(E)(e) of the settlement agreement then states: "Beginning on January 1, 2012, any remaining principal and interest, will be divide [sic] by 12 and Valiant will make 12 equal payments of the remaining principal and interest to FMCTI."

Valiant argues that the following phrase, "assuming that the principal owed to FMCTI is $2,400,000.00," of Paragraph 3(E) constituted a condition precedent. In addition, Valiant argues that its undisputed debt obligation to FMCTI is $2,106,246.92, which is less than the $2.4 million condition precedent, and therefore, the repayment provision of Paragraph 3(D) applies, not Paragraph 3(E). Again, we disagree.

Conditions precedent to an obligation to perform are those acts or events that occur subsequent to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). No particular words are necessary for the existence of the condition, but terms such as "if," "provided that," "on condition that," or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. *Id.* In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties. *Id.* Furthermore, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition. *Id.*

After reading the settlement agreement as a whole and considering the intent of the parties, we conclude that the phrase "assuming that the principal owed to FMCTI is $2,400,000.00" is not a condition precedent.

Paragraph 3(A) contains the following pertinent, unambiguous language: "FOR VALUE RECEIVED, VALIANT promises to pay to the order of [FMCTI], the principal sum of four hundred thousand dollars ($400,000), which is in addition to the sums in Paragraph [3(B)], to VALIANT to be used to cover VALIANT'S operating expenses through the end of June 2010." (Emphasis in original.)

Paragraph 3(B) includes the following pertinent language: "FOR VALUE RECEIVED, VALIANT promises to pay to the order of [FMCTI] the principal sum of two million dollars ($2,000,000.00), or so much thereof as may be disbursed to, or for the benefit of VALIANT'S subcontractors, vendors, and/or suppliers on the projects by FMCTI." (Emphasis in original.)

Thus, the essence of the settlement agreement is a loan and repayment plan through a "line of credit" arrangement between FMCTI and Valiant for an amount up to, but not necessarily, $2.4 million. Furthermore, Paragraph 3(D) does not contemplate the detailed repayment provisions (amounts owed, applicable payment periods, and deadlines) as in Paragraph 3(E). Instead, Paragraph 3(D) specifies the applicable interest rates and their respective calculations to the repayment provisions as set out in Paragraph 3(E) and sets a final payment deadline of "all unpaid principal and interest" by December 31, 2012.

Accordingly, we conclude that this phrase is not a condition precedent as Valiant argues because to do so would create an absurd result that vitiates Valiant's express obligation to repay FMCTI pursuant to the unambiguous repayment provisions set forth in Paragraph 3(E). *See generally id.* Valiant's final issue is overruled.

20

## IV. CONCLUSION

We reverse the trial court's judgments solely to the extent that they do not declare that the recitals constitute a part of the settlement agreement and render that the recitals constitute a part of the settlement agreement. In all other respects, the judgments are affirmed.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
3rd day of July, 2013.

21