# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00337-CV

---

**Parsley Minerals, LLC, Appellant**

**v.**

**Flat Creek Resources, LLC, Appellee**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-006682, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Parsley Minerals, LLC appeals from the trial court's judgment granting appellee Flat Creek Resources, LLC's Rule 91a motion to dismiss. *See* Tex. R. Civ. P. 91a (allowing party to move to dismiss cause of action on grounds that it has no basis in law or fact). For the reasons set forth below, we affirm the trial court's judgment.

### BACKGROUND

On October 1, 2018, Parsley, as lessor, and Flat Creek, as lessee, entered into an oil-and-gas lease contract ("2018 Lease"). The 2018 Lease covers roughly 640 acres located in Reeves County, Texas ("Leased Lands"). The Lease's term, subject to certain provisions in the Lease, and "unless sooner terminated under other provisions hereof," was for three years from October 1, 2018.

The Lease contains a provision that required Flat Creek, "[n]otwithstanding anything to the contrary," to begin drilling operations for one horizontal well (termed an "Obligation Well" in the Lease) on or before April 1, 2020, or it would be obligated to pay Parsley $500,000 within twenty business days of its failure to begin drilling. In March 2020, Parsley and Flat Creek entered into an amendment to the 2018 Lease ("March 2020 Amendment"). The March 2020 Amendment changed the date by which Flat Creek was required to begin drilling operations (or pay the $500,000 payment twenty business days later) to October 1, 2020. No other terms of the Lease were amended.

The Lease also contains a provision allowing Flat Creek "at any time and from time to time during the term of this Lease to release from the lands covered hereby any lands subject to this Lease and thereby be relieved of all obligations thereafter accruing as to the acreage so released," subject to certain restrictions not relevant here. On September 23, 2020—before the October 1, 2020 Obligation Well deadline—Flat Creek released the Lease in its entirety as to all the Leased Lands.

Parsley subsequently sued Flat Creek, asserting a claim for breach of contract, seeking damages in the amount of at least $500,000, plus attorneys' fees.[1] Parsley alleged that Flat Creek breached the contract "when after Flat Creek failed to timely commence the Obligation Well, Flat Creek failed to pay Parsley the $500,000.00 within twenty business days of the failure to commence to [sic] Obligation Well." Parsley also sought a declaratory judgment, *see* Tex. Civ. Prac. & Rem. Code § 37.004(a), requesting that the trial court interpret the 2018 Lease and the Obligation Well provision and declare that the drilling of the Obligation Well or payment of

---

[1] Parsley attached the following documents as exhibits to the petition: the 2018 Lease, the March 2020 Amendment, and Flat Creek's September 23, 2020 release of the Lease.

$500,000 is an obligation of Flat Creek "that accrued on April 1, 2018 [sic] (or October 1, 2018)."[2] Parsley made two further declaratory-judgment requests, "[a]dditionally and/or in the alternative." It requested that the trial court interpret the Lease and declare that the phrase "[n]otwithstanding anything to the contrary" means that the Obligation Well provision's requirements take precedence over the release provision and any effort by Flat Creek to relieve itself of the drill-or-pay requirement by making a release. Parsley also requested that the trial court interpret the March 2020 Amendment and declare it void and unenforceable as lacking any consideration.[3]

Flat Creek filed a Rule 91a motion to dismiss Parsley's suit. *See* Tex. R. Civ. P. 91a.1 (allowing party to move to dismiss cause of action "on the grounds that it has no basis in law or fact"). After conducting a hearing on the motion, the trial court granted the motion, ordering that "this action shall be dismissed in its entirety with prejudice at such time as this Court enters its Final Order on Attorney Fees." The trial court later issued a final judgment after considering evidence on the issue of whether Flat Creek should be awarded attorneys' fees. *See id.* R. 91a.7 (allowing trial court to award prevailing party all costs and reasonable and necessary attorneys' fees incurred with respect to challenged cause of action). In the final judgment, the trial court

---

[2] The date "April 1, 2018" appears to be a typographical error. Elsewhere in its petition, Parsley asserted that Flat Creek's obligation to drill or pay "by April 1, 2020 (or October 1, 2020) accrued on April 1, 2020 (or October 1, 2018)." However, Parsley elsewhere does not acknowledge its statement in the petition that April 1, 2020, was a possible accrual date for Flat Creek's obligation to drill or pay. Instead, Parsley argued in its response to the motion to dismiss and argues in its appellate brief that Flat Creek's obligation to drill or pay accrued on the Lease's effective date of October 1, 2018.

[3] Parsley has expressly waived appellate review of this argument, made in the alternative in the trial court, that the March 2020 Amendment lacked consideration. It now agrees that consideration supported the March 2020 Amendment and that the Amendment extended the drill-or-pay deadline to October 1, 2020. Accordingly, we consider the 2018 Lease and the March 2020 Amendment, taken together, as the agreement between the parties.

reiterated its order that Flat Creek's motion to dismiss was granted, and it denied Flat Creek's request for attorneys' fees. Parsley's appeal followed.

**STANDARD OF REVIEW**

Rule 91a allows a party to move for early dismissal of causes of action that lack legal or factual bases, based on the face of the pleadings and pleading exhibits. *See id.* R. 91a.1, R. 91a.3, R. 91a.6. A cause of action has no legal basis under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* R. 91a.1. A cause of action has no factual basis under Rule 91a "if no reasonable person could believe the facts pleaded." *Id.* A Rule 91a motion to dismiss must identify each cause of action it attacks and specify why the claim has no basis in law or in fact (or both). *Id.* R. 91a.2. Rule 91a prohibits a trial court from considering evidence when ruling on the motion and requires a decision "based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." *Id.* R. 91a.6; *see also id.* R. 59 (providing that documents "constituting, in whole or in part, the claim sued on, or the matter set up in defense," may be deemed part of pleadings).

Appellate courts review the merits of a trial court's Rule 91a ruling de novo "because the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam); *see also In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (explaining that "whether a defendant is entitled to dismissal under the facts alleged is a legal question"). To determine whether the cause of action has a basis in law or fact, "we must construe the pleadings liberally in favor of the

4

plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings." *Koenig v. Blaylock*, 497 S.W.3d 595, 599 (Tex. App.—Austin 2016, pet. denied).

## ANALYSIS

Parsley challenges the trial court's dismissal of its suit, asserting in two issues that the trial court erred in its construction of the relevant terms of the parties' contract (which consists of the 2018 Lease and the March 2020 Amendment). Parsley contends in its third issue that if we find in its favor, we should remand the case to the trial court for it to determine whether Parsley is entitled to attorneys' fees as the prevailing party on the Rule 91a motion to dismiss.

When construing the 2018 Lease and the March 2020 Amendment, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the written agreement. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To do so, "we examine the entire agreement in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). "If [contract] language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). We cannot rewrite the 2018 Lease and March 2020 Amendment "or add to [their] language under the guise of interpretation." *Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 640-41 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *American Mfrs.*, 124 S.W.3d at 162 (stating that "we may neither rewrite the parties' contract nor add to its language")). We must enforce the 2018 Lease and March 2020 Amendment as written. *See id.* (citing *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex. 1965)).

5

**Relevant Contract Provisions**

Before beginning our analysis, we set forth the language of the relevant contract provisions, including the two provisions at issue (the Obligation Well provision in paragraph 5(d) and the release provision in paragraph 7).

> 1. **<u>Grant of Lease</u>.**  Lessor, in consideration of Ten and No/100 Dollars and other good and valuable consideration, receipt of which is hereby acknowledged, and of the covenants and agreements of Lessee hereinafter contained, does hereby grant, lease and let unto Lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and other minerals produced in association with oil or gas, together with the right to make surveys on said land, lay pipe lines, construct roads and bridges, build tanks, telephone lines, and other structures on said land necessary or useful in Lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby.
>
> 2. **<u>Term</u>.** Except as expressly provided below, and unless sooner terminated under other provisions hereof, this Lease shall remain in force for a term of three (3) years from the Effective Date [October 1, 2018], hereinafter called "Primary Term", and as long thereafter as Operations, as defined in Paragraph 5, are conducted upon the Leased Premises with no cessation of more than ninety (90) consecutive days.  This is a "paid-up" lease, and no delay rental payments are necessary to maintain this Lease in effect during the Primary Term.

Paragraph 3 sets forth the terms of the royalty payments that Parsley would be entitled to receive from the sale of the various oil, gas, and mineral products that Flat Creek might produce or mine from the Leased Lands.  Paragraph 4 establishes the terms of payments for shut-in well royalties that Flat Creek might pay Parsley to maintain the Lease for a certain defined time period.[4]

---

[4] The 2018 Lease defines a "shut-in well" as "a well on the Leased Premises capable of producing gas or gas and condensate in paying quantities, but from which neither gas nor condensate is sold or used off the Leased Premises."  Paragraph 4 also establishes that Flat Creek has a continuing obligation to use reasonable efforts to find a market for the gas, reasonably develop the lands then subject to the Lease, and drill all such wells on the lands then subject to the Lease that a reasonably prudent operator would drill, even if it is making shut-in royalty payments.

Paragraph 5 describes the various "Operations" that Flat Creek could perform on the Leased Lands and what constitutes "Operations," "Drilling Operations," "Reworking Operations," and the "Obligation Well." Subparagraph 5(d) is the Obligation Well provision at issue in this suit:

> **"Obligation Well":** Notwithstanding anything to the contrary, Lessee must commence Drilling Operations for one (1) horizontal well on or before April 1, 2020 or Lessee shall be obligated to pay to Lessor $500,000.00 (five hundred thousand US dollars) within twenty (20) business days of such failure to commence. Lessee shall have no further obligation to Lessor for failure to timely commence Drilling Obligations for the Obligation Well other than the payment described in this Paragraph 5(d). In addition to all other rights and remedies available to Lessor, including the right to seek payment from Lessee for the failure to commence the Obligation Well, Lessee's failure to timely (1) commence Drilling Operations for the Obligation Well, or (2) pay Lessor $500,000 (five hundred thousand US dollars) is a condition to the granting of this Lease and shall therefore result in an automatic forfeiture and termination of the Lease if not fully and timely complied with by Lessee.

Paragraph 6 provides for partial termination of the Lease "upon expiration of the Primary Term, or upon cessation of 'Continuous Drilling Operations' (as hereinafter defined), whichever is later, . . . as to all the lands and depths then covered thereby except lands subject to being designated by Lessee, in accordance with the requirements of this Paragraph, as 'Retained Lands.'"

Paragraph 7 is the release provision at issue in this suit. It provides as follows:

> 7. **Partial Releases.** Lessee shall have the right *at any time* and from time to time during the term of this Lease to release from the lands covered hereby any lands subject to this Lease and *thereby be relieved of all obligations thereafter accruing as to the acreage so released* provided that (1) Lessee may not release any portion of this Lease included in a pooled unit as long as Operations are being conducted on such unit, and (2) any such partial release must release all depths in and under the lands so released that were originally granted, leased and let hereby.

(Emphases added.)

7

**Parsley's Contract-Construction Issues**

In its first contract-construction issue, Parsley asserts that the "notwithstanding anything to the contrary" clause in the Obligation Well provision controls over the release language in paragraph 7, precluding Flat Creek's September 23, 2020 release of the Leased Lands from excusing Flat Creek from its obligation to drill by October 1, 2020, or pay $500,000. In its second issue, Parsley asserts that the drill-or-pay obligation accrued at the contract's October 1, 2018 formation because the contract, according to Parsley, expressly states that the obligation was a condition precedent to Parsley's conveyance of the leasehold rights. Thus, Parsley contends, even if we disagree with its interpretation of the "notwithstanding" clause's effect, Flat Creek's release still could not excuse it from the drill-or-pay obligation because paragraph 7's terms only relieved Flat Creek from "all obligations thereafter accruing."

### *Accrual Date of the Drill-or-Pay Obligation*

We first consider Parsley's second issue—when Flat Creek's drill-or-pay obligation accrued. This question is key because the date Flat Creek's obligation accrued determines whether Flat Creek's September 23, 2020 release could excuse it from the drill-or-pay obligation at all. Accordingly, we must determine whether Flat Creek's obligation to drill or pay accrued on October 1, 2018, the contract's effective date, or on October 1, 2020, the date by which Flat Creek agreed in the March 2020 Amendment to either drill or pay $500,000.

We give terms in a contract their plain, ordinary, and generally accepted meaning unless the agreement shows that the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Parsley acknowledges that the term "accrue" means "to come into existence as a legally enforceable claim." *Accrue*, Merriam-

8

Webster.com, https://www.merriam-webster.com/dictionary/accrue (last visited Feb. 13, 2023); *see also accrue*, *Black's Law Dictionary* (11th ed. 2019) ("to come into existence as an enforceable claim or right; to arise").

In this case, the plain language of the Lease establishes that Parsley would not have had any legally enforceable claim against Flat Creek under the Obligation Well provision until October 1, 2020, the date by which Flat Creek either had to drill or pay. Not until that date would Parsley's "right to seek payment from Lessee for the failure to commence the Obligation Well" have arisen, and in addition, an automatic forfeiture and termination of the Lease would have occurred had Flat Creek failed to drill or pay. Thus, because Flat Creek released all the Leasehold Lands before October 1, 2020, it thereby relieved itself "of all obligations thereafter accruing as to the acreage," which include its obligation to drill or pay.

The Texas Supreme Court "acknowledged more than a half a century ago in *Superior Oil Co. v Dabney* that parties to an oil and gas lease may validly include a provision allowing the lessee to surrender all or part of the lease." *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 152 (Tex. 2004) (citing *Superior Oil Co. v. Dabney*, 211 S.W.2d 563, 565 (Tex. 1948)); *see also Ladd Petroleum Corp. v. Eagle Oil & Gas Co.*, 695 S.W.2d 99, 106 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.) (explaining that surrender clauses "are designed to relieve a lessee of certain obligations, such as duty to pay delay rentals, drill or develop"). In *Superior Oil*, the Texas Supreme Court considered in an appeal from a declaratory-judgment action whether a lessee was under a legal obligation to drill a test well when the lessee had delivered a release of most of the leased acreage before the expiration of the lessee's deadline to drill the test well. 211 S.W.2d at 563-64. The court noted that the lease provided that the lessee should drill by the deadline but also provided that if operations for drilling had not begun on or before one year from

9

the contract date, then lessee was to pay lessors $10 per acre, as an advance on payment from production, with the same provision made for subsequent years. *Id.* at 564. In the lease at issue in *Superior Oil*, the lease did not terminate automatically if the lessee should fail to drill or pay; instead, the lessee was bound to do one or the other. *Id.* As the court explained,

> These obligations, as well as the covenant to drill a test well, might obviously prove quite onerous and profitless to the lessee, should developments demonstrate that the land would not yield oil or gas in paying quantities. And unless it took the pains to contract against this outturn, the lessee might find itself absolutely obliged to go forward with a fruitless and costly undertaking. But the parties did provide against this eventuality. In very plain language they agreed that the lessee might at any time execute and deliver to the lessors a release of any part of the leased premises and 'thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the acreage surrendered.'
>
> *This provision did not state in effect 'all obligations except the duty to drill a test well,' but in comprehensive language declared that a surrender would relieve the lessee of all obligations. None was excepted.* This language must be given an operative effect in harmony with its plain import and must be held to grant to the lessee the right to release any part of the land covered by the lease and be relieved of the duty to drill on the surrendered acreage.

*Id.* at 564-65 (emphasis added). The court concluded that while the lessee could not excuse itself from a duty to pay amounts already due or to execute obligations whose time for performance had passed, the lessee's obligation to drill a test well was still prospective at the time of its release because its deadline had not yet passed. *Id.* at 565. Thus, because it was not in default at the time it delivered the release, it was entitled to surrender the leased acreage and be relieved "of all further obligations, including the duty to drill." *Id.* The court further explained that the lessee's duty to drill or pay advance royalties from year to year during the primary term of the lease was not essentially different from the obligation to drill the test well, and it could also be effectively terminated by a timely release. *Id.* at 565-66. We conclude that Flat Creek, under the similarly

plain language of paragraph 7, had the right to be relieved from its duty to drill or pay by a timely release.

We are not persuaded by Parsley's argument that because the Obligation Well provision states that Flat Creek's promise to drill or pay "is a condition to the granting of this Lease," the "drill-or-pay obligation was a condition precedent to Parsley's conveyance of the leasehold rights from the start."[5] As an initial matter, we note that generally the remedy for the failure of a condition precedent is forfeiture of the contract, not damages, and all Parsley seeks is the $500,000 payment, not a judgment that it need not perform under the contract because of forfeiture. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) (noting that because "forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than conditions" (quoting *Henshaw v. Texas Nat. Res. Found.*, 216 S.W.2d 566 (1949)). But Parsley asserts that because it conditioned its initial grant of the leasehold on Flat Creek's agreement to drill or pay, Flat Creek's acceptance of the rights granted by the Lease "gave rise to the drill-or-pay obligations and caused them to accrue then," i.e., October 1, 2018.

However, Parsley misunderstands the nature of a condition precedent to the formation of a contract. Here, the drill-or-pay obligation was not a condition to the formation of the contract. The effective date of the Lease was October 1, 2018, and Parsley granted the rights enumerated in paragraph 1 of the Lease to Flat Creek for a term beginning on that effective date.

---

[5] We note that the Obligation Well provision actually states that "Lessee's *failure* to timely (1) commence Drilling Operations for the Obligation Well, or (2) pay Lessor $500,000 (five hundred thousand US dollars) is a condition to the granting of this Lease," but we will assume for the sake of argument that this was a scrivener's error and the parties intended to say "promise," not "failure." (Emphasis added.)

11

Thus, the Lease's terms reveal that the parties did not intend to wait for Flat Creek to drill or pay to form the contract—Parsley's conveyance of the rights to Flat Creek happened before Flat Creek's deadline to drill or pay. *See id.*

We conclude that the plain terms of the Obligation Well provision establish that Parsley could not have had a legally enforceable claim against Flat Creek based on a failure to drill until October 1, 2020, at which point Flat Creek would become obligated to pay $500,000 no later than October 30, 2020 (twenty business days later). We further conclude that Flat Creek's release of the Lease on September 23, 2020, relieved it from all obligations thereafter accruing, including the obligation to drill by October 1, 2020, or to pay Parsley $500,000 in lieu of drilling the Obligation Well. When read in context with the remainder of the contract, the plain language of the Obligation Well provision allowed Flat Creek to maintain its rights for the full three-year primary term if it had not yet begun Operations on the Leased Lands by choosing on or before October 1, 2020, to either drill or pay. The plain language of the release provision allowed Flat Creek to release its interest in the Leased Lands before the drill-or-pay obligation arose on October 1, 2020. *See Superior Oil Co.*, 211 S.W.2d at 564-65 (holding that because lessee's obligation to drill test well was still prospective when it delivered release to lessor, it was not in default as to its duty to drill when release was delivered, and thus "lessee was privileged under the agreement of lease to surrender it and be relieved of all further obligations, including the duty to drill"). We overrule Parsley's second issue.

### Effect of the "Notwithstanding" Clause

Although Parsley argues in its first issue that the Obligation Well provision's "notwithstanding anything to the contrary" clause precludes Flat Creek's release from relieving

Flat Creek from the drill-or-pay obligation, we disagree. We agree with this general proposition of law relied upon by Parsley:

> When parties use the clause "notwithstanding anything to the contrary contained herein" in a paragraph of their contract, they contemplate the possibility that other parts of their contract may conflict with that paragraph, and they agree that this paragraph must be given effect regardless of any contrary provisions of the contract.

*E.g.*, *Helmerich*, 180 S.W.3d at 643 (collecting cases). Parsley argues that "on its face" the Obligation Well provision conflicts with paragraph 7's release provision because paragraph 7, as interpreted by Flat Creek, purportedly negates Flat Creek's obligation to drill or pay. Parsley also argues that Flat Creek's interpretation renders the Obligation Well provision's "notwithstanding" clause meaningless and mere surplusage. Neither argument is persuasive.

In this case, the release provision in paragraph 7 does not conflict with the Obligation Well provision. The release provision unambiguously provides Flat Creek with the "right *at any time* and from time to time during the term of this Lease to release from the lands covered hereby any lands subject to this Lease and *thereby be relieved of all obligations thereafter accruing as to the acreage so released*." (Emphases added.) As discussed above, the Obligation Well provision required Flat Creek either to start Operations by drilling an Obligation Well by October 1, 2020, or to pay Parsley $500,000 within twenty business days of that date to maintain its rights under the Lease for the Primary Term. The Lease gives Flat Creek the right to release all Leased Lands before its obligation to drill or pay accrues; that right does not conflict with Flat Creek's obligation to drill or pay by the deadline, which would have accrued only if it had not released the Leased Lands in their entirety.

13

Parsley's interpretation would lead to potentially absurd results. Parsley contends that because the Obligation Well provision "contains the 'notwithstanding' clause, **even after a release**, Flat Creek must drill or pay." Parsley does not dispute that paragraph 7 allowed Flat Creek to release the Leased Lands in whole or in part at any time. Under Parsley's interpretation of the Obligation Well provision, however, if Flat Creek had decided to release the Leased Lands a month after entering into the Lease, Flat Creek nevertheless would have remained obligated to drill or pay by the deadline, which under the original Lease was eighteen months later. However, Flat Creek would no longer have had the rights required to enter on the Leased Lands to drill; therefore, it would have been required to pay the $500,000 once the deadline passed. In effect, Parsley asks us to read into the Lease a $500,000 cancellation penalty. We decline to do so; "we may neither rewrite the parties' contract nor add to its language." *American Mfrs.*, 124 S.W.3d at 162.

Our conclusion that paragraph 7's release provision does not conflict with the Obligation Well provision does not render the "notwithstanding" clause meaningless. As the court stated in *Helmerich*, parties use this type of clause when "they contemplate the possibility that other parts of their contract *may* conflict with that paragraph." 180 S.W.3d at 643 (emphasis added). This contract is not like the contracts in some cases in which the "notwithstanding" clause is expressly directed to another provision concerning the same issue, and a direct conflict has arisen related to that issue. *See, e.g.*, *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 532 (Tex. 2015) (concluding that direct conflict existed between two provisions related to arbitration of disputes between parties because one provision stated all disputes were to be decided by arbitration, while another provision stated "[n]otwithstanding any provision to the contrary contained in the Contract Documents, Subcontractor expressly agrees that this Subcontract does

14

not contain a provision for the mandatory arbitration of disputes" or incorporate by reference any provision in general contract); *N. M. Uranium, Inc. v. Moser*, 587 S.W.2d 809, 812 (Tex. App.—Corpus Christi–Edinburg 1979, writ ref'd n.r.e.) (concluding that later royalty provision containing "notwithstanding" clause had priority over prior "contrary provision of contract directed to same question"). Here, the language of the "notwithstanding" clause is broader. We are not required to determine that some other part of the contract conflicts with the Obligation Well provision to prevent the "notwithstanding" clause from being rendered meaningless. The purpose of such a clause is to ensure that the Obligation Well provision controls over any other potentially conflicting provision of the contract. *See Helmerich*, 180 S.W.3d at 643. An actual conflict need not arise to keep the clause from being rendered meaningless.

We conclude that paragraph 7 is not contrary to the Obligation Well provision, and therefore, the "notwithstanding" clause in the Obligation Well provision does not preclude paragraph 7 from operating as drafted to release Flat Creek from its "thereafter accruing" obligation to drill or pay by October 1, 2020. We overrule Parsley's first issue.

## CONCLUSION

Because we have overruled both of Parsley's contract-construction issues, we hold that its petition lacks a basis in law, and therefore, the trial court did not err by granting Flat Creek's Rule 91a motion. Accordingly, we need not reach Parsley's third issue requesting that we remand the case to the trial court for consideration of its request for attorneys' fees. *See* Tex. R. App. P 47.1. We affirm the trial court's judgment dismissing Parsley's petition with prejudice.

_____

Gisela D. Triana, Justice

15

Before Justices Baker, Triana, and Theofanis

Affirmed

Filed:   February 17, 2023